WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Peter Gruenberger

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————x

In re:                                                          :

LEHMAN BROTHERS HOLDINGS INC., *et al.*        :

                        Debtors.                               :

————————————————————————x

LEHMAN BROTHERS SPECIAL FINANCING INC.   :

                        Plaintiff,                            :

-against-                                                      :

BNY CORPORATE TRUSTEE SERVICES LIMITED

                                                               :

                        Defendant.

                                                               :

————————————————————————x

Chapter 11

Case No. 08-13555 (JMP)

Adversary Proceeding
No.: 09-01242 (JMP)

**PLAINTIFF LEHMAN BROTHERS SPECIAL FINANCING INC.'S STATEMENT OF**
**UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 7056-1 of the Local Bankruptcy Rules for the Southern

District of New York, Lehman Brothers Special Financing Inc. ("LBSF"), a debtor and debtor in

possession in the jointly administered chapter 11 case of Lehman Brothers Holdings Inc.

("LBHI") and its affiliated debtors (collectively, the "Debtors,"), hereby submits this Statement

of Undisputed Facts in Support of its Motion for Summary Judgment. All exhibits cited are attached to the Declaration of Alanna Lee dated June 10, 2009, attached to the Motion for Summary Judgment.[1] LBSF respectfully states as follows:

1. Commencing on September 15, 2008, LBHI and certain of its direct and indirect subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.

2. LBSF commenced its case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 3, 2008.

3. LBHI's and LBSF's chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4. LBSF and LBHI are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. BNY's predecessor, J.P. Morgan Corporate Trustee Services Limited, entered into Principal Trust Deed dated October 10, 2002 as amended and restated from time to time, with Dante Finance Public Limited Company ("Dante") pursuant to which a multi-issuer secured obligation program (the "Dante Program") was established. *See* Ex. A (Principal Trust Deed 2005); Ex. B (Principal Trust Deed 2004).

6. Under the Dante Program, Saphir Finance Public Limited Company ("Saphir"), an Irish corporation, issued various credit-linked synthetic portfolio notes, including the Saphir 2004-11 and Saphir 2006-5 transactions (the "Notes"). *See* Ex. D § 1.1 (Saphir 2004-11 Supp. Trust Deed), Ex. E § 1.1 (Saphir 2006-5 Supp. Trust Deed) (collectively, the agreements

---

[1] All capitalized terms not otherwise defined herein shall be defined as in LBSF's Motion for Summary Judgment.

underlying the Saphir 2004-11 and Saphir 2006-5 transactions are referred to as the "<u>Transaction Documents</u>").

7.    These Notes were secured by various assets and certain secured obligations, including credit-default swap transactions between LBSF and Saphir that were executed in connection with the issuance of the Notes.  *See* Ex. C (Saphir 2004-11 Supp. Trust Deed); Ex. D (Saphir 2006-5 Supp. Trust Deed).

8.    LBSF is the swap counterparty ("<u>Swap Counterparty</u>") under the transactions. Ex. C at 1 (Saphir 2004-11 Supp. Trust Deed); Ex. D at 1 (Saphir 2006-5 Supp. Trust Deed).

9.    BNY acquired J.P. Morgan Corporate Trustee Services Limited and succeeded it as Trustee under the Supplemental Trust Deeds.  *See* Ex. A (Principal Trust Deed 2005); Ex. B (Principal Trust Deed 2004); Ex. C (Saphir 2004-11 Supp. Trust Deed); Ex. D (Saphir 2006-5 Supp. Trust Deed).

10.    The Supplemental Trust Deeds reference a Swap Agreement (the "<u>Swap Agreement</u>") that incorporates the terms of an ISDA Master Agreement between Dante and LBSF (the "<u>ISDA</u>").  Ex. C at §§ 1.3, 2.2 (Saphir 2004-11 Supp. Trust Deed); Ex. D at §§ 1.3, 2.2 (Saphir 2006-5 Supp. Trust Deed).

11.    Under the applicable ISDAs, the bankruptcy filing of any party constitutes an "Event of Default."  Ex. E § 5(a)(vii) & Sched. Pt. 1(e) (ISDA 2005); Ex. F § 5(a)(vii) & Sched. Pt. 1(e) (ISDA 2004).

12.    Absent any Event of Default by LBSF, the Transaction Documents provide that "Swap Counterparty Priority" applies, which provides that LBSF receives any payments before noteholders.  Ex. C § 5.5 (Saphir 2004-11 Supp. Trust Deed); Ex. D § 5.5.1 (Saphir 2006-5 Supp. Trust Deed); Ex. A § 6.2(i) (Principal Trust Deed 2005); Ex. B § 6.2(i) (Principal Trust

Deed 2004); Ex. A Sched. 2, Pt. C § 4(b)(a) (Principal Trust Deed 2005); Ex. B Sched. 2, Pt. C § 4(b)(i) (Principal Trust Deed 2004).

13.     Upon an Event of Default by LBSF under the Swap Agreement, such as its Chapter 11 filing, the Supplemental Trust Deed and Drawdown Agreements applicable to the Transaction Documents provide that LBSF's payment priority would change from "Swap Counterparty Priority" to "Noteholder Priority."  Ex. C § 5.5 (Saphir 2004-11 Supp. Trust Deed); Ex. D § 5.5.1 (Saphir 2006-5 Supp. Trust Deed).

14.     Under Noteholder Priority, LBSF would receive payments, if any, after payments are made to noteholders.  Ex. A § 6.2(iii) & Sched. 2, Pt. C § 4(b)(vi) (Principal Trust Deed 2005); Ex. B § 6.2(iii) & Pt. C § 4(b)(iii) (Principal Trust Deed 2004).

15.     The Terms and Conditions of the Notes, contained in Schedule 2 Part C of the Principal Trust Deed and Schedule 2 to the Supplemental Trust Deed of the Saphir 2006-5 transaction, also provide for the same modification of LBSF's payment priority.  Ex. A Sched. 2, Pt. D § 4(b)(i), (iii) (Principal Trust Deed 2005); Ex. B Sched. 2, Pt. D § 4(b)(i), (iii) (Principal Trust Deed 2004); Ex. D Sched. 2, Terms & Conditions of the Notes, Condition 38 (Saphir 2006-5 Supp. Trust Deed).

16.     Condition 44 of the Terms and Conditions of the Notes modifies the calculation of the Early Redemption Amount upon an Event of Default.  Ex. C Terms & Conditions of Notes, Condition 44 (Saphir 2004-11 Supp. Trust Deed); Ex. D Sched. 2, Terms & Conditions of the Notes, Condition 44 (Saphir 2006-5 Supp. Trust Deed); *see also* Ex. A Sched. 2, Pt. C § 6(g) (Principal Trust Deed 2005) (defining Early Redemption Amount); Ex. B Sched. 2, Pt. C § 6(g) (Principal Trust Deed 2004) (same).

17.     Condition 44 sets forth the calculation for determining the Early Redemption Amount to be paid in the event of an early redemption or Event of Default.  Ex. C Terms & Conditions of Notes, Condition 44 (Saphir 2004-11 Supp. Trust Deed); Ex. D Sched. 2, Terms & Conditions of the Notes, Condition 44 (Saphir 2006-5 Supp. Trust Deed).

18.     Absent an Event of Default in relation to LBSF under the Swap Agreement, the Early Redemption Amount is calculated as (1) the Note's pro-rata share of the proceeds from the sale or realization of the collateral, minus, if payable to LBSF as Swap Counterparty, (2) the amount of any "Unwind Costs" divided by the total number of Notes outstanding.  Ex. C Terms & Conditions of Notes, Condition 44 (Saphir 2004-11 Supp. Trust Deed); Ex. D Sched. 2, Terms & Conditions of the Notes, Condition 44 (Saphir 2006-5 Supp. Trust Deed).

19.     Unwind Costs is defined to include the value of the termination payment due from or to the Swap Counterparty.  Ex. C Terms & Conditions of Notes, Condition 44 (Saphir 2004-11 Supp. Trust Deed); Ex. D Sched. 2, Terms & Conditions of the Notes, Condition 44 (Saphir 2006-5 Supp. Trust Deed).

20.     Absent an Event of Default in relation to LBSF under the Swap Agreement, LBSF as Swap Counterparty would receive payment of the Unwind Costs owed to it because calculation of the Early Redemption Amount payable to the noteholders expressly carves that amount out from the amount payable on the Notes.  Ex. C Terms & Conditions of Notes, Condition 44 (Saphir 2004-11 Supp. Trust Deed); Ex. D Sched. 2, Terms & Conditions of the Notes, Condition 44 (Saphir 2006-5 Supp. Trust Deed).

21.     In the Event of Default in relation to LBSF under the Swap Agreement, the Early Redemption Amount is calculated as the Note's pro-rata share of the proceeds from the sale or realization of the collateral, with no amount subtracted for the Unwind Costs due to the Swap

Counterparty. Ex. C Terms & Conditions of Notes, Condition 44 (Saphir 2004-11 Supp. Trust Deed); Ex. D Sched. 2, Terms & Conditions of the Notes, Condition 44 (Saphir 2006-5 Supp. Trust Deed).

22.     In the Event of Default in relation to LBSF under the Swap Agreement, the Unwind Costs are added into the calculation only if payable to the issuer of the Notes. Ex. C Terms & Conditions of Notes, Condition 44 (Saphir 2004-11 Supp. Trust Deed); Ex. D Sched. 2, Terms & Conditions of the Notes, Condition 44 (Saphir 2006-5 Supp. Trust Deed).

23.     Together, the Transaction Documents have the effect of providing that the payment priority LBSF otherwise receives under the Transaction Documents will be modified so that LBSF will be paid out in a lower priority to payments made to the noteholders solely as a result of its bankruptcy filing.

24.     After LBSF's chapter 11 filing, counsel for the Debtors sent a letter on November 25, 2008 to the Bank of New York Mellon Trust Company, National Association, and the Bank of New York Mellon notifying them that (a) any actions with respect to transactions in which BNY serves as trustee may be subject to the automatic stay provisions of 11 U.S.C. § 362, and (b) any provisions purporting to subordinate any amounts payable to LBSF would be unenforceable and unlawful. Ex. G (Nov. 25, 2008 Letter from L. Fife to BNY Mellon).

25.     On December 1, 2008, Saphir, as issuer of the Notes, sent notices to LBSF stating that LBSF's filing of its bankruptcy petition constituted an Event of Default under the ISDA and designating December 1, 2008 as the Early Termination Date under section 6(a) of the ISDA. Ex. H (Saphir 2006-5 Termination Notice); Ex. I (Saphir 2004-11 Termination Notice).

26.     No distributions under the Transaction Documents have occurred since Saphir sent its notices.

27.     LBSF has unsatisfied contractual obligations to pay under the Transaction Documents, including the Buyer Final Payment under the Swap Agreement.  Ex. C Annex 3 § 3(c) (Saphir 2004-11 Supp. Trust Deed); Ex. D Sched. 2, Annex 3 § 3(b) (Saphir 2006-5 Supp. Trust Deed).

28.     BNY also has unsatisfied contractual obligations to direct the payment of the Early Redemption Amounts, either to LBSF or noteholders, and to apply either Swap Counterparty or Noteholder Priority.  Ex. C Terms & Conditions of the Notes, Condition 44 (Saphir 2004-11 Supp. Trust Deed); Ex. D Sched. 2, Terms & Conditions of the Notes, Condition 44 (Saphir 2006-5 Supp. Trust Deed); Ex. C § 5.5 (Saphir 2004-11 Supp. Trust Deed); Ex. D § 5.5.1 (Saphir 2006-5 Supp. Trust Deed).

29.     On redemption of the collateral under the Saphir 2006-5 Supplemental Trust Deed, "the Custodian shall arrange for the deposit into the Collection Account of the redemption proceeds of such Collateral."  Ex. D § 5.12.2 (Saphir 2006-5 Supp. Trust Deed).

30.     BNY continues to hold the security over the mortgaged property granted under the agreements as continuing security for (among other things), (i) the payment of all sums due under the Supplemental Trust Deeds and the Notes and (ii) for the performance of the Issuer's obligations under the Swap Agreement, and shall release the mortgaged property when it becomes payable or deliverable to LBSF or the noteholders.  Ex. C §§ 5.1, 5.3, 5.4, 5.5 (Saphir 2004-11 Supp. Trust Deed); Ex. D §§ 5.1, 5.3, 5.4, 5.5 (Saphir 2006-5 Supp. Trust Deed).

31.     All parties to the agreements must, upon the occurrence of an Early Termination Date, make calculations of the payments due upon early termination and provide those calculations, including details, to the other party.  Ex. E § 6(d)(i) (ISDA 2005); Ex. F  6(d)(i) (ISDA 2004).

32.    On May 13, 2009, Perpetual Trustee Company Limited, an Australian noteholder under the Transaction Documents, filed a claim in the High Court of Justice Chancery Division, Royal Courts of Justice, in London seeking an order that BNY must pay it in accordance with Noteholder Priority under the Principal Trust Deed.  Ex. J (Perpetual Claim).

33.    LBSF has intervened in the Perpetual action and has filed an application to stay those proceedings so that this Bankruptcy Court may resolve the *ipso facto* and automatic stay claims raised by LBSF in this case.  Ex. K (Stay Application).

34.    The English court has not yet ruled on the stay application.

Dated: June 10, 2009
      New York, New York

           Respectfully submitted,


            */s/ Ralph I. Miller*
           WEIL, GOTSHAL & MANGES LLP
           Ralph I. Miller
           Peter Gruenberger
           767 Fifth Avenue
           New York, New York 10153
           Telephone:  (212) 310-8000
           Facsimile:  (212) 310-8007

           Attorneys for Debtors
           and Debtors in Possession