REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel.: 212.521.5400
Fax: 212.521.5450
    Eric A. Schaffer
    Michael J. Venditto
    David M. Schlecker

*Attorneys for BNY Corporate Trustee Services, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., et al. | Case No. 08-13555 (JMP) |
| Debtors. | |
| LEHMAN BROTHERS SPECIAL FINANCING INC., | |
| Plaintiff, | Adv. Proc. No. 09-01242 (JMP) |
| - against - | *Related to Docket No. 1* |
| BNY CORPORATE TRUSTEE SERVICES LIMITED, | |
| Defendant. | |

**MEMORANDUM OF LAW OF BNY CORPORATE TRUSTEE SERVICES LIMITED**
**IN SUPPORT OF MOTION FOR DISMISSAL OF COMPLAINT OR OTHER RELIEF**

Dated: June 22, 2009

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND ................................................................................................4

      A.     The Dante Programme And The Saphir Notes .......................................................4

      B.     Commencement Of Competing Proceedings
           In The United States And England .......................................................................8

ARGUMENT ...................................................................................................................10

I.     IF PERPETUAL CANNOT BE JOINED, FEDERAL RULE
      12(b)(7) AND FEDERAL RULE 19 MANDATE DISMISSAL ....................................10

      A.     LBSF Should Conduct Discovery On The Issue
           Of Personal Jurisdiction ....................................................................................11

      B.     If This Court Lacks Personal Jurisdiction Over
           Perpetual, This Action Should Be Dismissed. .....................................................12

           1.     Perpetual is a Necessary Party under Rule 19(a) ......................................13

                  (a)     Perpetual is a Necessary Party because
                          it Cannot Protect its Interests. .......................................................13

                  (b)     Perpetual is a Necessary Party because BNY
                          is at Risk of Multiple or Inconsistent Obligations. .........................15

           2.     Perpetual is an Indispensable Party under Rule 19(b) .............................16

                  (a)     Prejudice to BNY and Perpetual ....................................................16

                  (b)     Inability to Mitigate the Prejudice .................................................17

                  (c)     Inadequacy of Judgment Rendered
                          in Perpetual's Absence ..................................................................17

                  (d)     Existence of an Adequate Remedy in Another Forum .................17

      C.     Summary Of The Rule 19 Analysis .....................................................................18

II.    THE ACTION SHOULD BE DISMISSED ON THE
      ADDITIONAL GROUND OF *FORUM NON CONVENIENS* .......................................19

      A.     LBSF's Forum Choice Is Not Controlling ............................................................19

**TABLE OF CONTENTS**
**(Continued)**

B.    England Constitutes An Adequate And More Appropriate Forum For Adjudication Of The Dispute ...........................................21

C.    The Balance Of Private And Public Interests Favors Dismissal............................22

    1.    Private Interest Factors ...............................................................22

    2.    Public Interest Factors.................................................................24

D.    Summary Of *Forum Non Conveniens* Analysis......................................................24

III.    THE COURT SHOULD ABSTAIN AS A MATTER OF INTERNATIONAL COMITY ........................................................25

A.    Comity Warrants Abstention And Communication With The English Court ............................................25

B.    Absent Dismissal, This Adversary Proceeding Should Be Stayed...............................................................28

CONCLUSION......................................................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page**

Aguinda v. Texaco, Inc.,
    303 F.3d 470 (2d Cir. 2002) ..............................................................................22, 24

Aracruz Trading Ltd. v. JaPaul Oil & Maritime Servs., PLC,
    No. 08 Civ. 3511(JGK), 2009 WL 667298 (S.D.N.Y. Mar. 16, 2009) ...................19

Bancredit Cayman Ltd. v. Santana (In re Bancredit Cayman Ltd.),
    Adv. Proc. 08-1147, 2008 WL 5396618 (Bankr. S.D.N.Y. Nov. 25, 2008) ............2

Borden, Inc. v. Meiji Milk Products Co.,
    919 F.2d 822 (2d Cir. 1990) ...................................................................................29

Cadle Co. v. Bankers Federal Savings FSB,
    929 F. Supp. 636 (E.D.N.Y. 1996) .........................................................................26

Capital Currency Exchange, N.V. v. National Westminster Bank PLC,
    155 F.3d 603 (2d Cir. 1998) ...................................................................................23

Clarkson Co. v. Shaheen,
    544 F.2d 624 (2d Cir. 1976) ...................................................................................26

Dow Jones & Co. v. Harrods, Ltd.,
    237 F. Supp. 2d 394, 444 (S.D.N.Y. 2002) ...........................................................26

Dow Jones & Co. v. Harrods Ltd.,
    346 F.3d 357 (2d Cir. 2003) ...................................................................................26

F.D.I.C. v. Bank of New York,
    479 F. Supp. 2d 1 (D.D.C. 2007)......................................................................14, 15

Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.,
    960 F. Supp. 701 (S.D.N.Y. 1997) ............................................................... *passim*

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501 (1947)................................................................................................24

Hilton v. Guyot,
    16 S. Ct. 139 (1895)................................................................................................25

Hirsch v. Stone,
    62 F.2d 120 (5th Cir. 1932) ....................................................................................15

In re AHT Corp.,
    265 B.R. 379 (S.D.N.Y. 2001) ...............................................................................26

In re Regus Business Centre Corp.,
    301 B.R. 122 (Bankr. S.D.N.Y. 2003).....................................................................25

Iragorri v. United Technologies Corp.,
    274 F.3d 65 (2d Cir. 2001) ......................................................................................19

**Cases**                                                                    **Page**

Kappel v. Comfort,
    914 F. Supp. 1056 (S.D.N.Y. 1996) ........................................................29

Landis v. North American Co.,
    299 U.S. 248 (1936)..........................................................................28

Mattera v. Clear Channel Commc'ns, Inc.,
    239 F.R.D. 70 (S.D.N.Y. 2006) ..............................................................2

Maxwell Commc'ns Corp. plc v. Societe Generale
    (In re Maxwell Commc'ns Corp. plc), 93 F.3d 1036 (2d Cir. 1996) .....................27

Mobil Sales & Supply Corp. v. Republic of Lithuania,
    No. 97 CIV. 4045(DLC), 1998 WL 196194 (S.D.N.Y. Apr. 23, 1998), aff'd, 166
    F.3d 1201 (2d Cir. 1998) ....................................................................23

N.S.N. Int'l Indus. v. E.I. du Pont de Nemours & Co., Inc.,
    143 F.R.D. 30 (S.D.N.Y. 1992) .........................................................11, 17

Niv v. Hilton Hotels Corp.,
    No. 06 Civ 7839(PKL), 2008 WL 4849334 (S.D.N.Y. Nov. 10, 2008)........................ passim

Piper Aircraft Co. v. Reyno,
    454 U.S. 235 (1981)......................................................................20, 23

Pollux Holding Ltd. v. Chase Manhattan Bank,
    329 F.3d 64 (2d Cir. 2003) .................................................................. passim

Public Service Commission v. Wycoff Co.,
    344 U.S. 237 (1952)..........................................................................26

Rapoport v. Banco Mexican Somex, S.A.,
    668 F.2d 667 (2d Cir. 1982) ................................................................ passim

Schertenlieb v. Traum,
    589 F.2d 1156 (2d Cir. 1978) ...............................................................23

Spiro v. Parker Brothers,
    No. 91 Civ. 7759 (JFK), 1992 WL 197405 (S.D.N.Y. Aug. 4, 1992)........................... passim

Stonington Partners, Inc. v. Lernout & Hauspie Speech Products,
    310 F.3d 118 (3d Cir. 2002) ................................................................27

Strategic Value Master Fund, Ltd. v. Cargill Financial Services Corp.,
    421 F. Supp. 2d 741 (S.D.N.Y. 2006) ...................................................22, 23

Texas Int'l Magnetics, Inc. v. Sunkyong Indus. Co.
    (In re Magnetic Audiotape Antitrust Litig.), 334 F.3d 204 (2d Cir. 2003) ............12

Tradewinds Airlines, Inc. v. Soros,
    No. 08 Civ. 5901(JFK), 2009 WL 435298 (S.D.N.Y. Feb. 23, 2009)......................29

# TABLE OF AUTHORITIES
## (Continued)

**Cases**      **Page**

Turner Entertainment Co. v. Degeto Film GmbH,
    25 F.3d 1512 (11th Cir. 1994) ............................................25

Weber v. King,
    110 F. Supp. 2d 124 (E.D.N.Y. 2000) ....................................11, 17 18

Wiwa v. Royal Dutch Petroleum Co.,
    226 F.3d 88 (2d Cir. 2000) ............................................19

### English Cases

Banque Indosuez SA v. Ferromet Resources Inc,
    [1993] BCLC 112 ............................................18, 24

MCC Proceeds Inc v. Bishopgate Investment Trust plc & Ors.,
    [1999] C.L.C. 417 ............................................18

Fiona Trust v. Privalov,
    [2007] 2 Lloyds Rep 267 and [2007] 4 All ER 951 ............................................22

### Statutes & Rules

11 U.S.C. § 362 ............................................18

11 U.S.C. § 1501 ............................................17

11 U.S.C. § 1505 ............................................17, 27

28 U.S.C. § 1334(c) ............................................1, 25, 26

Fed. R. Bankr. P. 7012 ............................................1, 10

Fed. R. Bankr. P. 7019 ............................................1, 10

Fed. R. Civ. P. 12(b)(7) ............................................*passim*

Fed. R. Civ. P. 19 ............................................*passim*

Defendant BNY Corporate Trustee Services Limited ("BNY"), by its undersigned

counsel, respectfully submits this Memorandum of Law, and the accompanying Declarations of

Michael J. Venditto and Sanjay Jobanputra, in support of its Motion for an order:

> (i)       pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure,
> as made applicable to this adversary proceeding by Rules 7012 and 7019 of the
> Federal Rules of Bankruptcy Procedure, dismissing the Complaint filed by
> Lehman Brothers Special Financing Inc. ("LBSF") for failure to join a necessary
> and indispensable party; or,

> (ii)      dismissing the Complaint filed by LBSF pursuant to the doctrine of *forum
> non conveniens*; or,

> (iii)     pursuant to 28 U.S.C. § 1334(c), abstaining from adjudicating this
> adversary proceeding in the interest of justice or on the basis of comity; or

> (iv)     staying this adversary proceeding pending the determination of an action
> pending in England before the High Court of Justice, Chancery Division, entitled
> "Perpetual Trustee Company Limited, Claimant, against BNY Corporate Trustee
> Services Limited, Defendant;"

together with such other and further relief as the Court may deem appropriate.

## PRELIMINARY STATEMENT

LBSF has not sued the real party in interest.  BNY is the only defendant in this adversary

proceeding, but the real party in interest here is Perpetual Trustee Company Limited as trustee

for Mahogany Series Trust ("Perpetual"),[1] the owner of the notes that are the center of the

dispute in this adversary proceeding.  LBSF and Perpetual assert competing claims to collateral

that is securing repayment of these notes.  Yet, LBSF has not sued Perpetual in this Court

---

[1] Perpetual Trustee Company Limited is an Australian financial firm that is acting as the trustee for the Mahogany Series Trust ("Mahogany"), an investment program sponsored by an overseas affiliate of the Debtors.  The beneficiaries of Mahogany are the ultimate parties in interest with respect to the claims raised by LBSF in this adversary proceeding.  Unless otherwise indicated, references to Perpetual in this Motion are to Perpetual in its role as the Mahogany trustee.

because it believes this Court may not have personal jurisdiction over Perpetual.[2]  Instead, LBSF has sued BNY because it is subject to this Court's jurisdiction.

While BNY may be a defendant of convenience, its interests in this litigation are distinct from the interests of Perpetual, as evidenced in part by the fact that Perpetual sued BNY in England.[3]  LBSF intervened in the English Action, so all three parties are presently litigating these issues before an English court.

The common focus of this adversary proceeding and the English Action is the competing claims of LBSF and Perpetual to payments from proceeds to be realized from certain collateral held by BNY in England and Australia (the "Saphir Assets").[4]  The Saphir Assets are held partly in a custodial account in England and partly in an Australian deposit account in Australia.[5]  See Declaration of Sanjay Jobanputra, ¶¶ 11-13, filed contemporaneously herewith (the "Jobanputra Dec.").[6]  LBSF and Perpetual each asserts the right to priority ahead of the other in respect of payments from the net proceeds of realization (the "Net Proceeds") of the Saphir Assets.

---

[2]  See Transcript Excerpt of June 3, 2009 Omnibus Hearing at 102, attached as Exhibit "1" to the accompanying Declaration of Michael J. Venditto ("Venditto Dec."), filed contemporaneously herewith.

[3]  "Perpetual Trustee Company Limited, Claimant, against BNY Corporate Trustee Services Limited, Defendant" High Court of Justice, Chancery Division, Claim No. HC09C01612 (the "English Action").

[4]  As described in more detail infra, Perpetual is the sole holder of certain synthetic portfolio notes (the "Saphir Notes") issued by Saphir Finance Public Limited Company ("Saphir"), an Irish company organized by Lehman Brothers International (Europe) ("LBIE"), to act as an issuer under an investment program that was sponsored, structured, and arranged by LBIE.  The repayment of the Saphir Notes is secured by certain collateral and contract rights that are held by BNY as trustee.

[5]  Since the Notes are payable in Australian dollars, the Saphir Assets that consist of cash are on deposit in Australian dollar accounts at National Australia Bank, an Australian bank.

[6]  In deciding a motion to dismiss for failure to join a necessary party, a court may consider matters outside the pleadings, including various affidavits and exhibits appended thereto.  See Mattera v. Clear Channel Commc'ns, Inc., 239 F.R.D. 70, 74 (S.D.N.Y. 2006) (granting motion to dismiss for failure to join necessary).  The same is true for a motion to dismiss on grounds of forum non conveniens.  "On a motion to dismiss for forum non conveniens, a court considers not only the allegations of the pleadings but all evidence before it, and does not assume that the facts pleaded are true."  Bancredit Cayman Ltd. v. Santana (In re Bancredit Cayman Ltd.), Adv. Proc. 08-1147, 2008 WL 5396618, at *1 n.1 (Bankr. S.D.N.Y. Nov. 25, 2008).

In the English Action, Perpetual seeks the equivalent of a declaratory judgment that BNY must pay these proceeds in accordance with a scheme of priorities that is referred to in the governing documents as "Noteholder Priority."  In this proceeding, LBSF seeks a declaratory judgment that BNY must pay these proceeds in accordance with a scheme of priorities that is referred to in the governing documents as "Swap Counterparty Priority."[7]

BNY has no beneficial interest in either the Saphir Assets or the Net Proceeds other than to recover its fees and expenses in accordance with the governing documents, and BNY is entitled to reimbursement of such fees and expenses regardless of whether Swap Counterparty Priority or Noteholder Priority is controlling.  What BNY does have, however, is a risk that the two Courts may reach inconsistent conclusions and subject BNY to conflicting orders with regard to the Saphir Assets or distribution of the Net Proceeds.

Both Courts presumably would look to avoid unnecessary conflict; BNY clearly has an interest in avoiding it.  If this Court could assert jurisdiction over Perpetual, the risk of inconsistent judgments would be greatly reduced.  However, LBSF has advised this Court that it does not believe there is a basis to assert personal jurisdiction over Perpetual here.  If this Court does not have jurisdiction over Perpetual, this adversary proceeding should be dismissed pursuant to Rule 12(b)(7) so that the real stakeholders can litigate the issues in England before the only Court that has the ability to afford a definitive and fully binding judgment.

---

[7]   Under both Noteholder Priority and Swap Counterparty Priority, fees and expenses of certain services providers (including BNY) ("Senior Liabilities") rank first for payment.  The difference between Noteholder Priority and Swap Counterparty Priority is that, after payment of the Senior Liabilities, Noteholder Priority requires the remainder of the proceeds to be applied in meeting Perpetual's claim, while Swap Counterparty Priority requires the proceeds to be applied to satisfy LBSF's claim before any distribution is made to Perpetual.  This difference is significant because there is a real likelihood that the proceeds remaining after payment of the Senior Liabilities will not be sufficient to cover the claims of both Perpetual and LBSF.

Alternatively, BNY seeks either (i) dismissal or abstention on the grounds of *forum non conveniens*, comity, or the interest of justice, or (ii) a stay of this action pending a determination by the English Court.

## FACTUAL BACKGROUND

**A.     The Dante Programme And The Saphir Notes**

On October 10, 2002, BNY, then known as J.P. Morgan Corporate Trustee Services Limited,[8] as trustee, and Dante Finance Public Limited Company ("Dante"),[9] as issuer, entered into a Principal Trust Deed (as subsequently amended and restated on a number of occasions, the "Principal Trust Deed") in connection with the Dante Programme, a multi-issuer secured obligation program arranged by LBIE.  See Complaint, Ex. A.[10]

LBIE created Saphir, a special purpose entity formed in Ireland, to issue multiple series of notes under the Dante Programme.  This adversary proceeding involves two series of Australian Dollar notes issued by Saphir:  the Series 2004-11 and Series 2006-5 synthetic portfolio notes.  See Supplemental Trust Deed and Drawdown Agreement for Series 2004-11 Notes, dated December 10, 2004 (the "Series 2004-11 Supp. Deed") (Ex. B), and Supplemental Trust Deed and Drawdown Agreement for Series 2006-5 Notes, dated March 17, 2006 (the "Series 2006-5 Supp. Deed" (Ex. C) and, together with the Series 2004-11 Supp. Deed, the "Supp. Deeds").

---

[8]  Bank of New York Mellon ("BNYM") acquired the worldwide trustee operations of JP Morgan Chase Bank, N.A., effective October 2006.  By an order of the High Court of England and Wales entered on April 3, 2007, BNYM, through its London Branch, acceded to all of the obligations of JP Morgan Chase Bank, N.A., London Branch including those set forth in the transaction documents to which these proceedings relate.  As part of this process, BNYM acquired J.P. Morgan Corporate Trustee Services Limited (the trustee originally named in the Principal Trust Deed), and subsequently changed the name of that company to BNY Corporate Trustee Services Limited, the Defendant in this proceeding.

[9]  Dante is an Irish company.

[10]  References to documents attached as exhibits to the Complaint hereinafter are cited to as "(Ex. __)."

Saphir used funds paid by the purchasers of the Saphir Notes to purchase the Saphir Assets. At the same time, it entered into certain credit default swaps with LBSF as the counterparty. See, e.g., ISDA Master Agreement, dated October 10, 2002 (Ex. D), and related Schedules, as amended and restated January 30, 2004 (in connection with the Series 2004-11 Notes), and July 21, 2006 (in connection with the Series 2006-5 Notes) (collectively, the "Swap Agreements").[11]

The Swap Agreements authorized early termination in the event of certain defined defaults, including a party's filing of a bankruptcy petition. ISDA Master Agreement § 5(a)(vii) (Ex. D). LBSF's bankruptcy filing was a default under the Swap Agreements. On December 1, 2008, as a result of this default, Saphir exercised its right to early termination by sending LBSF a Form of Early Termination Notice, designating December 1, 2008, as the Early Termination Date of the Swap Agreements. See Form of Early Termination Notices (Ex. F, Ex. G).

Termination of the Swap Agreements obligated Saphir, under the Principal Trust Deed, as supplemented, to redeem the Saphir Notes. BNY has a security interest in, and control over the Saphir Assets, which are held in a custody account in England and a deposit account in Australia. BNY is entitled, and may be obligated, to enforce this security interest in the Saphir Assets. Following enforcement, BNY will be required to distribute the Net Proceeds according to the applicable priority distribution scheme set forth in the Principal Trust Deed, as supplemented.

For purposes of distributing the Net Proceeds, the transaction documents create two alternate distribution schemes. The first, denominated as "Swap Counterparty Priority," provides that Net Proceeds are paid to LBSF, until its claims under the Swap Agreements are fully

---

[11] The Schedules are attached to the Venditto Dec. as Ex. "2" and Ex. "3."

satisfied, before any distributions are made to Noteholders. The second, "Noteholder Priority," provides that Net Proceeds are used to repay fully the obligations to the Noteholders before any distributions are made to LBSF. See Trust Deed, §§ 6.2(i), 6.2(iii) (Ex. A). The Supplemental Trust Deeds provide that BNY must distribute the proceeds in accordance with either the Swap Counterparty Priority or the Noteholder Priority, depending on the circumstances. See, e.g., Series 2006-5 Supp. Deed, § 5.5.1 (Ex. C).

Perpetual and LBSF disagree as to which of these alternative distribution priorities should be given effect under the applicable agreements. Perpetual claims that the Net Proceeds should be distributed to it first under Noteholder Priority. LBSF, on the hand, argues that Swap Counterparty Priority controls, entitling LBSF to priority distribution.

The transactions at issue here are predominately English (or non-U.S.) in nature, having been structured and executed abroad by foreign entities, and are governed by English law. The Principal Trust Deed, the Supplemental Trust Deeds and Drawdown Agreements pertaining to the Saphir Notes, the Saphir Notes, and the related Swap Agreements (collectively referred to as the "Transaction Documents"), are all governed by and to be construed in accordance with English law. See Trust Deed, § 20.1 (Ex. A.), Supp. Deeds, § 14.1 (Ex. B, Ex. C), ISDA Master Agreement, § 13(a) (Ex. D), Schedules to ISDA Master, Part 4-(i) (Venditto Dec., Exs. 2 and 3). Moreover, the parties to the Transaction Documents (including LBSF as Swap Counterparty) each submitted to the jurisdiction of the Courts of England to adjudicate disputes arising in connection with the Transaction Documents and the Series 2004-11 and Series 2006-5 Notes. See Trust Deed, § 20.2 (Ex. A), Supp. Deeds, § 14.2 (Ex. B, Ex. C), ISDA Master Agreement, § 13(b)(i) (Ex. D).

The Dante Programme was structured and the Saphir Notes were issued in England by LBIE.  See Jobanputra Dec. ¶ 3.  With the exception of LBSF, the parties to the transactions principally are foreign entities.

- LBIE, which arranged the Dante Programme and serves as Calculation Agent for the Saphir Notes, as well as Disposal Agent and Dealer, is a London-based entity organized under the laws of England.  See Series 2004-11 Supp. Deed, Intro. ¶ 6 at 2 (Ex. B); Series 2006-5 Supp. Deed, Intro. ¶ 7 at 2 (Ex. C); Offering Circular Supplement for Series 2004-11, § 54 ("Series 2004-11 Circular") (Venditto Dec. Ex. "4"); Series Prospectus for Series 2006-5, § 54 ("Series 2006-5 Prospectus") (Venditto Dec. Ex. "5");

- BNY, as Trustee and Custodian in the transactions, is organized under English law and has its principal place of business in London.  Complaint at ¶ 6.  See Series 2004-11 Circular, § 39 (Venditto Dec. Ex. "4"); Series 2006-5 Prospectus, § 39 (Venditto Dec. Ex. "5"); Jobanputra Dec., ¶ 1.

- BNY Securities Services (Ireland) Ltd.'s current duties as Irish Paying Agent were assumed from JP Morgan Bank (Ireland) plc; it is an Irish incorporated entity based in Dublin.  See 2004-11 Offering Circular, § 39; 2006-5 Series Prospectus, § 39; Jobanputra Dec., ¶ 5, n.1.

- Saphir, the issuer of the Series 2004-11 and Series 2006-5 Notes, is organized under the laws of Ireland with it principal place of business in that country.  See 2004-11 Offering Circular (cover page); 2006-5 Series Prospectus (cover page).  For purposes of the Saphir Notes and the Dante Programme, Saphir designated LBIE as its agent for service of process and LBIE's London address as the place at which to serve it with process.  See, e.g., Series 2004-11 Supp. Deed, § 14.3 (Ex. B).

- Finally, Perpetual, the sole holder of the entirety of the Saphir Notes, is organized under the laws of Australia.  Jobanputra Dec., ¶ 18; see also CPR Part 8 Claim Form, High Court of Justice, Chancery Division, Royal Courts of Justice, England, dated May 13, 2009, ¶ 2(1)-(2) (Ex. H).

Collateral for the Saphir Series 2004-11 primarily consists of AUD 75 million floating rate notes issued by Australia and New Zealand Banking Group Limited.  See Series 2004-11 Supp. Deed, § 1.4 (Ex. B).  Collateral for Saphir Series 2006-5 primarily consists of AUD 50 million floating rate notes issued by the Royal Bank of Scotland plc.  See Series 2006-5 Supp. Deed, § 1.4 (Ex. C).  As noted above, the property at the heart of this dispute is held in custody accounts in England and Australia that are administered in England pursuant to Transaction

Documents which are governed by English law.  See, Jobanputra Dec., ¶¶ 11-13; Trust Deed, §
20 (Ex. A).

**B.      Commencement Of Competing Proceedings In The United States And England**

On May 13, 2009, Perpetual commenced the English Action against BNY, seeking the
equivalent of a declaratory judgment that BNY is required to make payment pursuant to
Noteholder Priority.  See CPR Part 8 Claim Form (Ex. H).  In this case, payment would go to
Perpetual as the sole owner of the Saphir Notes.  See CPR Part 8 Claim Form, ¶¶ 2(1)-(2) (Ex.
H).

In the English Action, Perpetual seeks a determination that the Noteholder Priority
distribution scheme was triggered as a result of an Event of Default by LBSF, as Swap
Counterparty, under the Swap Agreements.  See Supplemental Trust Deed and Drawdown
Agreement, § 5.5.  In addition, Perpetual seeks a ruling that it is not obligated to indemnify BNY
in the event that BNY is required to make payment pursuant to the Noteholder Priority
distribution scheme.

On May 20, 2009, LBSF commenced this adversary proceeding against BNY.  In its
Complaint, LBSF seeks a declaratory judgment (i) that BNY is required to make payment
pursuant to Swap Counterparty Priority and further (ii) that giving effect to Noteholder Priority
would contravene the Bankruptcy Code.  See Complaint at 11-12.  At a June 3, 2009 hearing
before this Court, LBSF stated that Perpetual was not named as a party to this adversary
proceeding solely because of LBSF's uncertainty regarding personal jurisdiction over Perpetual.
See June 3, 2009 Hearing Transcript Excerpt at 102 (Venditto Dec. Ex. 1).

Also on May 20, 2009, LBSF moved to intervene in the English Action and sought a stay
of that action pending adjudication of the adversary proceeding in this Court, which LBSF filed
later that day.  LBSF's motion to intervene in the English Action was not contested by Perpetual

or BNY and was granted by the English Court on May 21, 2009.  See Part 8 Claim Minute of Order, dated May 21, 2009 ("Scheduling Order"), issued in the English Action (Venditto Dec. Ex. "6").

The English Court set a schedule requiring LBSF to submit evidence in support of its motion for a stay by June 11, 2009, and requiring Perpetual and BNY to submit evidence responsive to LBSF's motion and on the merits of Perpetual's underlying claim by June 25, 2009.  See Scheduling Order at 2.  The English Court scheduled trial on all issues within a 10-day window from July 6, 2009.  See Notice of Trial Date, dated June 3, 2009 (Venditto Dec. Ex. "7").

On June 1, 2009, LBSF requested that this Court authorize LBSF to file a motion for summary judgment so that such a motion could be included in materials submitted to the English Court.   See Letter from Weil, Gotshal & Manges LLP to Judge Peck, dated June 1, 2009 (D.I. 5).[12]  At the omnibus hearing held on June 3, 2009, this Court granted LBSF's request to file its motion for summary judgment, but did not set a briefing schedule in light of the fact that BNY's time to respond to the Complaint had not yet expired.  See June 3, 2009 Hearing Transcript Excerpt at 110 (Venditto Dec. Ex. 1).

As this dispute currently stands, two pending actions – one in England and the other here – raise the same question of payment priority.  Either Court might decide this issue in a timely manner.  Only in the English Action, however, all are of the necessary parties present.  Because

---

[12]  In that letter, counsel for the Plaintiff stated:  "If this Court grants leave to file the motion for summary judgment, we believe it will be most efficient for all parties if LBSF could submit a copy of the summary judgment motion as part of LBSF's evidence to the English court by June 10, 2009.  That will allow the estate to incur the briefing costs in an efficient way and will present the same arguments to both courts to illustrate the need for this Court to have precedence."

Perpetual's involvement is crucial to a binding determination of the issues, it must be joined as a necessary party or, if joinder is not feasible, this adversary proceeding should be dismissed.

## ARGUMENT

## I.
## IF PERPETUAL CANNOT BE JOINED, FEDERAL RULE 12(B)(7)
## AND FEDERAL RULE 19 MANDATE DISMISSAL

This adversary proceeding must be dismissed unless Perpetual is joined as a defendant. Fed. R. Civ. P. 12(b)(7), made applicable here by Fed. R. Bankr. P. 7012, provides for dismissal of an action where a plaintiff fails to join a necessary party pursuant to Fed. R. Civ. P. 19.

Rule 19, made applicable here by Fed. R. Bankr. P. 7019, prescribes a two-step inquiry for determining whether an action must be dismissed.[13]  Fed. R. Civ. P. 19.  The Court first

---

[13]  Rule 19(a)(1) provides, in relevant part, as follows:

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if

    (A) in that person's absence, the court cannot accord complete relief among existing parties; or

    (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

        (i) as a practical matter impair or impede the person's ability to protect the interest; or

        (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)-(B).  Rule 19(b) provides, in relevant part:

If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:

    (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

    (2) the extent to which any prejudice could be lessened or avoided by:

        (A) protective provisions in the judgment;

        (B) shaping the relief; or

        (C) other measures;

    (3) whether a judgment rendered in the person's absence would be adequate; and

    (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b)(1)-(4).

determines whether a missing party is necessary and, if so, whether it is feasible to join that party in the action. If joinder is not feasible, the Court determines whether "in equity and good conscience" the case can proceed without the necessary party. If the case cannot so proceed, the missing party is deemed indispensable and the action must be dismissed. See <u>N.S.N. Int'l Indus. v. E.I. du Pont de Nemours & Co., Inc.</u>, 143 F.R.D. 30, 34 (S.D.N.Y. 1992) (dismissing breach of contract action for failure to join third party that, by virtue of its role in the transaction, was necessary and indispensable party); <u>Weber v. King</u>, 110 F. Supp. 2d 124, 127 (E.D.N.Y. 2000) (dismissing case where limited liability company was necessary party in dispute among members of LLC and joinder would destroy diversity jurisdiction). As discussed below, because Perpetual is a necessary and indispensable party, Rule 19 requires dismissal of this action if Perpetual cannot be joined.

**A.    LBSF Should Conduct Discovery On The Issue Of Personal Jurisdiction.**

If this Court has jurisdiction over Perpetual, LBSF should be required to join Perpetual as a party to this action. LBSF states that it lacks information as to whether this Court has personal jurisdiction over Perpetual.

LBSF cannot be permitted to litigate issues which implicate Perpetual's claims and interests – and threaten BNY with conflicting judgments in Perpetual's absence – based on LBSF's concern that personal jurisdiction may be lacking. Nor should this Court be placed in the position of having to rule in a factual vacuum. LBSF, having determined to proceed in this Court without joining a necessary party, and in doing so creating a risk of multiple and

inconsistent judgments, should be authorized and directed to conduct discovery for the limited

purpose of determining whether Perpetual is subject to personal jurisdiction in this Court.[14]

**B.    If This Court Lacks Personal Jurisdiction Over Perpetual, This Action Should Be Dismissed.**

Perpetual is a necessary party to this adversary proceeding.  Perpetual and LBSF are the

true stakeholders in this case, asserting competing claims to the Net Proceeds.  BNY, far from

having an identity of interests with Perpetual, has been sued by Perpetual in England to compel

BNY to follow Perpetual's distribution instructions.  Perpetual also has refused to indemnify

BNY for any liability, including litigation costs, incurred in this case.  Clearly, BNY is not here

as a substitute or proxy for Perpetual.

Applying Rule 19 to these facts, this action cannot proceed in Perpetual's absence.  As

more fully discussed below, (i) adjudication of this case may impair Perpetual's rights, (ii) if

Perpetual is not subject to this Court's jurisdiction, any adjudication here may not bind Perpetual

or preclude it from pursuing a different determination in the English Action, where both

Perpetual and LBSF are parties, (iii) absent dismissal, BNY faces a substantial risk of  double

liability under conflicting judgments of this Court and the English court; and (iv) dismissal of

this adversary proceeding would not deny LBSF an adequate remedy because LBSF may pursue

its claim in the English court, where all parties' rights may be determined in a consistent manner.

On strikingly similar facts, the Court in <u>Rapoport v. Banco Mexican Somex, S.A.</u>, 668

F.2d 667, 669 (2d Cir. 1982), affirmed dismissal of an action pursuant to Rules 12(b)(7) and 19.

The Court held that Mexican citizens who asserted competing claims to deposits held by

---

[14]    Courts have broad discretion to permit such discovery where a motion to dismiss raises issues of personal jurisdiction.  <u>See</u>, <u>e.g.</u>, <u>Texas Int'l Magnetics, Inc. v. Sunkyong Indus. Co. (In re Magnetic Audiotape Antitrust Litig.)</u>, 334 F.3d 204, 207-08 (2d Cir. 2003) (district court improperly denied plaintiffs the opportunity to conduct limited discovery as to whether defendant possessed minimum contacts in the United States, conferring personal jurisdiction, before deciding motion to dismiss).

Rapoport at a Mexican bank were necessary parties who had to be joined, if feasible, in Rapoport's action seeking payment of the deposits. Although the District Court did not have personal jurisdiction over the Mexican claimants, all of the claimants were parties to Mexican actions addressing the same issue. Id. at 669. In affirming dismissal, the Court of Appeals found that the competing claimants were necessary parties in the New York action because the action affected their interests in and claims to the deposits. The Court further found that, absent joinder, the defendant bank would face a substantial risk of incurring multiple or otherwise inconsistent obligations as a result of conflicting judgments that might issue in the New York and Mexican actions. Id. The Court also found that the Mexican courts provided an adequate forum for litigation of the rights of all claimants. Id. Accordingly, the Court of Appeals affirmed dismissal of the action. Id.

The same reasoning dictates that the present action be dismissed. If Perpetual cannot be joined in this case because this Court lacks personal jurisdiction over Perpetual, Rule 19 mandates dismissal.

**1.      Perpetual is a Necessary Party under Rule 19(a).**

Under Rule 19(a), a person is a necessary party if it claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) subject any existing party to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

**(a)      Perpetual is a Necessary Party because it Cannot Protect its Interests.**

As the sole holder of the Saphir Notes, Perpetual's claim of a priority interest in the Net Proceeds will be greatly impaired if this Court agrees with LBSF that Noteholder Priority should not be given effect. Perpetual formally established its position in the action filed in England

shortly before LBSF filed its Complaint in this Court.[15]  Should this adversary proceeding result

in a determination that the Net Proceeds must be distributed according to Swap Counterparty

Priority, Perpetual's interest in the Net Proceeds will be substantially diminished.[16]  See Global

Discount Travel Servs., LLC v. Trans World Airlines, Inc., 960 F. Supp. 701, 707 (S.D.N.Y.

1997) (granting motion to dismiss for failure to join indispensable party); Spiro v. Parker

Brothers, No. 91 Civ. 7759 (JFK), 1992 WL 197405, at *1 (S.D.N.Y. Aug. 4, 1992) (although

breach of contract claim brought by holders of 75% of interests under disputed contract could be

litigated without joinder of the remaining 25%, the 25% interest holders were necessary parties

because the action potentially could impair their interests and affect claims they subsequently

might seek to assert against defendant).  The potential impairment of its interest makes Perpetual

a necessary party under Rule 19(a)(1)(B)(i).

      BNY cannot adequately represent Perpetual's interests in this adversary proceeding.

Where the interests of a trustee and a beneficiary are not aligned, the trustee is not an adequate

representative of the absent beneficiary.  As discussed in F.D.I.C. v. Bank of New York, 479 F.

Supp. 2d 1, 10 (D.D.C. 2007) (citations omitted), a trust beneficiary "must be made a party to

any litigation involving his interest if the trustee or other beneficiaries are antagonistic to it."

"Similarly, a trustee does not adequately represent its beneficiaries when there is evidence

---

[15]  LBSF implicitly recognized Perpetual's necessity to this suit by virtue of its joinder of the noteholder as a defendant in a similar adversary proceeding concerning other notes issued under the Dante Programme.  See Lehman Brothers Special Financing, Inc. v. American Family Life Assurance Company of Columbus, Adv. Pro. No. 09-1261 (JMP).  That adversary proceeding involves similar issues of payment priority, and the joinder of the note holder as a defendant in that adversary proceeding demonstrates Perpetual's necessity in the instant action.

[16]  BNY is not required to advocate Perpetual's position in this adversary proceeding.  Under the Principal Trust Deed, BNY has no obligation to "enforce the security of the Mortgaged Property" (i.e., the Saphir Assets) absent indemnification.  See Trust Deed § 5.6 (Ex. A).  BNY is afforded "absolute and uncontrolled discretion" in the exercise of its functions and is immune from liability where it exercises its authority in good faith.  See Trust Deed §§ 9.1, 9.6 (Ex. A).  Additionally, as between BNY and its note holders, BNY's determination is conclusive.  See Trust Deed, § 9.12 (Ex. A).  With Perpetual seeking a determination in England that it is not required to indemnify BNY and BNY is at risk of facing multiple and inconsistent obligations, BNY is relieved of any obligation to represent the interests of Perpetual in the instant proceeding.

demonstrating that the trustee has assumed an 'antagonistic' attitude toward the beneficiaries and their legal position." Id. (citing, *inter alia*, Hirsch v. Stone, 62 F.2d 120, 122 (5th Cir. 1932) (trustee is adverse to beneficiary where it refuses to take action demanded by beneficiary)). In the present case, unlike F.D.I.C., the trustee has not been actively representing the beneficiary in related litigation. To the contrary, Perpetual sued BNY based on its alleged failure to act. And here, unlike in F.D.I.C., Perpetual has refused to indemnify the trustee for costs incurred in defending this case.

Accordingly, the first alternative for establishing Perpetual as a necessary party, under Rule 19(a)(1)(B)(i), is satisfied.

### (b)    Perpetual is a Necessary Party because BNY is at Risk of Multiple or Inconsistent Obligations.

Perpetual also is a necessary party under the alternative test in Rule 19(a)(1)(B)(ii) because, if Perpetual is not joined, there is a substantial risk that BNY will be subject to double or inconsistent obligations as a result of conflicting decisions here and in England.

The risk that BNY may face multiple and conflicting obligations is very real. Absent joinder, Perpetual may not be bound by this Court's decision (although LBSF will be bound by a ruling of the English court). If this Court were to determine that Noteholder Priority does not apply to the underlying transactions, Perpetual might be free to pursue its claim for Noteholder Priority in England. At the same time, Perpetual has refused to indemnify BNY against potential liability it might incur if it made a distribution of the Net Proceeds to Perpetual. To the contrary, Perpetual has asked the English Court to determine that Perpetual is not obligated to indemnify BNY for any liability it may incur in distributing the Net Proceeds under Noteholder Priority.

Accordingly, Perpetual also is a necessary party under Rule 19(a)(1)(B)(ii).  See

Rapoport, 668 F.2d at 669; Global Discount, 960 F. Supp. at 708-09; Spiro, 1992 WL 197405, at

*2.

### 2. Perpetual is an Indispensable Party under Rule 19(b).

Because Perpetual is a necessary party, Rule 19 requires that it be joined if feasible.  If

joinder is not feasible based on lack of personal jurisdiction, and the Court determines that "in

equity and good conscience" this action cannot proceed without Perpetual, Perpetual is an

indispensable party and Rule 19(b) requires dismissal.  See Rapoport, 668 F.2d at 669; Spiro,

1992 WL 197405, at *2.

In undertaking this analysis, the Court considers the following factors:

(1)  the extent to which a judgment rendered in the person's absence might
prejudice that person or the existing parties;

(2)  the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;
(B) shaping the relief; or
(C) other measures;

(3)  whether a judgment rendered in the person's absence would be adequate; and

(4)  whether the plaintiff would have an adequate remedy if the action were
dismissed for non-joinder.

Fed. R. Civ. P. 19(b)(1)-(4).  Consideration of these factors demonstrates that Perpetual is an

indispensable party and the inability to join Perpetual will require dismissal of this case.

### (a) Prejudice to BNY and Perpetual

Perpetual obviously would be prejudiced if this Court determined that BNY must

distribute the Net Proceeds to LBSF instead of Perpetual.  See, e.g., Spiro, 1992 WL 197405, at

*2.  BNY similarly would be prejudiced if this Court and the English Court render conflicting or

inconsistent judgments, potentially subjecting BNY to multiple obligations.  Id.[17]  This first factor weighs in favor of dismissal.

### (b)  Inability to Mitigate the Prejudice

Short of committing in advance to adopt the decision of the English Court, this Court cannot fashion any relief that would preclude prejudice to Perpetual and BNY.  And the rights of Perpetual, as a foreign non-party, cannot be adequately protected by this Court.  Rapoport, 668 F.2d at 669.  This second factor also weighs in favor of dismissal.

### (c)  Inadequacy of Judgment Rendered in Perpetual's Absence

A judgment rendered in Perpetual's absence would be inadequate because Perpetual, arguably not being bound by an adverse decision, would be free to pursue a conflicting judgment in England.  Global Discount, 960 F. Supp. at 710.  Continued litigation here in Perpetual's absence would not advance a complete or efficient disposition of this controversy.  N.S.N. Int'l Indus., 143 F.R.D. at 35-36.  This third factor weighs in favor of dismissal.

### (d)  Existence of an Adequate Remedy in Another Forum

The Court in Spiro found that "the most important" of the four factors in Rule 19(b) is "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Spiro, 1992 WL 197405, at *2 (citations omitted) (dismissal warranted, in part, because state and federal courts provided adequate alternative forums for adjudication of claims).  Here, LBSF has an adequate remedy in the English Court, where all necessary parties are present.[18]

---

[17]  Accord N.S.N. Int'l Indus., 143 F.R.D. at 35 (threat of double or inconsistent liability is very real where necessary party, that could not be joined, had sued defendant in state court action); Weber, 110 F. Supp. 2d at 130 (the possibility of a yet-to-be filed action in another forum that potentially could result in an inconsistent judgment against the defendant weighs in favor of dismissal); see also Rapoport, 668 F.2d at 669.

[18]  In adopting Chapter 15 of the Bankruptcy Code, 11 U.S.C. § 1501 et seq., Congress recognized that disputes such as those presented here may be determined in foreign courts.  LBSF, already a party to the English Action, has the ability to act with full authority on behalf of the estate in a foreign country.  11 U.S.C. § 1505.  Accordingly,

Continued on following page

The English Court also may be a superior forum if discovery is required. Because the underlying transactions were structured by LBSF's English affiliate and marketed to investors in Europe, Asia, and Australia, maintaining a second case in this Court would not further the policy of "complete, consistent, and efficient settlement of controversies." See Global Discount, 960 F. Supp. at 710; Weber, 110 F. Supp. 2d at 130.

Further, English courts routinely apply and interpret substantive provisions of American law, and the English Court may resolve all of the issues presented here, including any issues under American bankruptcy law. For example, in Banque Indosuez SA v. Ferromet Resources Inc [1993] BCLC 112, an English court discharged injunctions obtained by a secured creditor against a Chapter 11 debtor on the basis that the injunctions violated the automatic stay imposed by Section 362 of the Bankruptcy Code, and held that determination of the creditor's interest in the debtor's property had to proceed in the debtor's U.S. bankruptcy case. See also MCC Proceeds Inc v. Bishopgate Investment Trust plc & Ors. [1999] C.L.C. 417 (English court applied Article 8 of the New York Uniform Commercial Code to determine whether pledged securities were transferred to bona fide purchasers).[19] This final factor weighs in favor of dismissal.

## C.    Summary Of The Rule 19 Analysis

In sum, "equity and good conscience" dictate that Perpetual constitutes an indispensable party, such that its non-joinder mandates dismissal of the instant proceeding pursuant to Federal Rule 19(b).

---

Continued from previous page

adjudication of the issues in the English Action in no way impedes or deprives the estate of its rights to litigate the issues or pursue its available claims and defenses in connection therewith.

[19]   Copies of these English decisions are attached to the Venditto Dec. as Ex. "8" and Ex. "9."

## II.
## THE ACTION SHOULD BE DISMISSED ON THE ADDITIONAL GROUND OF
## *FORUM NON CONVENIENS*

The Complaint also should be dismissed on the independently sufficient ground of *forum non conveniens*. "'[T]he doctrine of *forum non conveniens* contemplates the dismissal of lawsuits brought by plaintiffs in their favored forum in favor of adjudication in a foreign court.'" Aracruz Trading Ltd. v. JaPaul Oil & Maritime Servs., PLC, No. 08 Civ. 3511(JGK), 2009 WL 667298, at *2 (S.D.N.Y. Mar. 16, 2009) (quoting Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 101 (2d Cir. 2000)).

An evaluation of a motion to dismiss on the grounds of *forum non conveniens* proceeds in several stages. Initially, the court determines the extent to which a plaintiff's choice of forum is entitled to deference. Iragorri v. United Technologies Corp., 274 F.3d 65, 73 (2d Cir. 2001) (*en banc*). After determining what level of deference should be accorded to the plaintiff's forum selection, the court assesses whether an adequate alternative forum exists. Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003); Iragorri, 274 F.3d at 73. If an adequate alternative exists, the court balances private and public interests to weigh the relative hardships involved in having the dispute adjudicated in the plaintiff's chosen forum or in the alternative forum suggested by the defendant. Iragorri, 274 F.3d at 73. In this case, each of these factors favors dismissal.

### A.    LBSF's Forum Choice Is Not Controlling.

A plaintiff's choice of forum generally is given deference because it is presumed to be the most convenient location for the action. Iragorri, 274 F.3d at 71. A court will not defer to a plaintiff's forum selection, however, where it appears that the choice of forum is inconvenient or was motivated by forum-shopping. Iragorri, 274 F. 3d at 72; Niv v. Hilton Hotels Corp., No. 06 Civ. 7839(PKL), 2008 WL 4849334, at *2 (S.D.N.Y. Nov. 10, 2008).

Although LBSF's bankruptcy case is pending in this Court, this is not the most convenient forum. England is the epicenter of the underlying transactions, all of which are governed by English law. The dispute concerns transactions structured and marketed in England by LBIE, an English entity, sold primarily to foreign investors, and administered by foreign entities. The Saphir Assets are administered by BNY in England, and are in BNY's custody in England and Australia. LBSF, Perpetual, and BNY all submitted to English jurisdiction in the Transaction Documents, and LBSF intervened in the English Action.

Additionally, documents relating to the structuring, marketing, and sale of the Saphir Notes are likely to be in the control of the English Administrators for LBIE and witnesses are likely to be in England. If this adversary proceeding proceeds here, any necessary discovery may be particularly inconvenient and burdensome, particularly if the parties must pursue discovery requests through the procedures prescribed by the Hague Convention. These facts militate against deferring to LBSF's forum choice. See Niv, 2008 WL 4849334, at *3 ("At a minimum, the fact that likely evidence and witnesses are not located or easily available in this forum undermines any argument that this Court was chosen because of the convenience of the parties."). Factors such as travel costs and accessibility to evidence overwhelmingly favor determination by the English Court. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981).

The procedural record suggests that LBSF is forum shopping. Forum shopping by Chapter 11 debtors often is consistent with the goals of the Bankruptcy Code, but proceeding in a forum that lacks jurisdiction over a necessary party cannot be reconciled with the legitimate interests of the Chapter 11 estate. LBSF is seeking a stay in the English Court in an attempt to force adjudication of the common issues in a Court that LBSF believes lacks jurisdiction over a

key stakeholder.[20]  This kind of forum shopping negates any argument for deference to LBSF's favored forum.

Nothing prevents LBSF from litigating the issue of payment priority in the English Action.  As noted above, the Bankruptcy Code expressly authorizes a Chapter 11 debtor to act in a foreign country and LBSF has already done so, by intervening in the English Action.  As discussed above, the English Court is fully capable of resolving issues under English law and the Bankruptcy Code.[21]  And as more fully discussed below, this Court, at the Debtors' request, has established a cross-border protocol that contemplates the Debtors' participation in foreign proceedings.

Because this forum is not convenient and its selection is the apparent product of forum shopping, LBSF's choice of forum should be given no deference.  This first factor favors dismissal on grounds of *forum non conveniens*.

**B.     England Constitutes An Adequate And More Appropriate Forum For Adjudication Of The Dispute.**

BNY's burden to demonstrate the existence of an adequate alternative forum is "not heavy."  Niv, 2008 WL 4849334, at *6.  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."  Pollux Holding Ltd., 329 F.3d at 75 (citation omitted).  The alternative forum presented in England is not simply adequate; it is superior.

Most persuasively, as a result of LBSF's intervention, all of the necessary parties are within the jurisdiction of the English Court.  LBSF joined the English Action voluntarily.  See

---

[20]  See Letter from Weil, Gotshal & Manges LLP to Judge Peck, dated June 1, 2009 (D.I. 5).

[21]  Like the plaintiff in Pollux, LBSF has "not asserted that English courts are in any way inadequate," and there is no basis to challenge the Court of Appeals' expression of high regard for English courts' "fairness and commitment to the rule of law."  Pollux, 329 F. 3d at 75.

<u>Pollux Holding</u>, 329 F.3d at 75 (England was adequate alternative forum where, among other things, the defendant submitted to the jurisdiction of English courts). And as set forth above, the dispute concerns transactions that occurred in England and are governed by English law, and contain permissive English jurisdictional clauses. <u>See</u> Trust Deed, §§ 20.1, 20.2 (Ex. A.), Supp. Deeds, §§ 14.1, 14.2 (Ex. B, Ex. C), ISDA Master Agreement, §§ 13(a), 13(b) (Ex. D), Schedules to ISDA Master, Part 4-(i) (Venditto Dec., Ex. 2 and Ex. 3).[22] England is not just an acceptable alternative forum, it is the more appropriate forum in which to adjudicate the dispute. This second factor also favors dismissal on grounds of *forum non conveniens*.

C. **The Balance Of Private And Public Interests Favors Dismissal.**

Consideration of private and public interests also favors dismissal.

1. <u>**Private Interest Factors**</u>

Relevant private interest considerations include: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) the costs of obtaining willing witnesses; and (4) other practical problems that make trial of a case easy, expeditious and inexpensive. <u>See</u>, <u>e.g.</u>, <u>Aguinda v. Texaco, Inc.</u>, 303 F.3d 470, 479 (2d Cir. 2002). Where, as here, "the majority of relevant evidence is located abroad, the burden imposed on the parties is . . . significant and favors dismissal." <u>Niv</u>, 2008 WL 4849334, at *12.

These factors uniformly support dismissal of this case. Because the underlying transactions were structured and administered in England and targeted to foreign investors, it is reasonable to expect that most relevant witnesses and substantial documentary evidence are located in England. <u>See</u> <u>Strategic Value Master Fund, Ltd. v. Cargill Financial Services Corp.</u>, 421 F. Supp. 2d 741, 766 (S.D.N.Y. 2006) ("Where most of the witnesses and documentary

---

[22] Under English law, jurisdiction clauses are interpreted broadly. <u>Fiona Trust v. Privalov</u> [2007] 2 Lloyds Rep 267 and [2007] 4 All ER 951 (Venditto Dec. Ex. "10").

evidence reside in a foreign country, conducting trial in the U.S. could impose such significant

burdens on the parties that dismissal is favored."). This Court cannot compel present or former

LBIE employees to present live testimony at trial. See, e.g., Capital Currency Exchange, N.V. v.

National Westminster Bank PLC, 155 F.3d 603, 611-12 (2d Cir. 1998) (England was a more

efficient and effective forum where crucial witnesses were not subject to compulsory process in

the United States but were subject to compulsory process in England); Schertenlieb v. Traum,

589 F.2d 1156, 1165 (2d Cir. 1978) ("inability to bring [witnesses] here for live cross-

examination before a fact-finder" is "[p]erhaps the most significant problem" making

adjudication in a United States court inappropriate).

     Additionally, the presence of English forum selection clauses in the Transaction

Documents factors "heavily" in favor of dismissal. See Mobil Sales & Supply Corp. v. Republic

of Lithuania, No. 97 CIV. 4045(DLC), 1998 WL 196194, at *11 (S.D.N.Y. Apr. 23, 1998), aff'd,

166 F.3d 1201 (2d Cir. 1998). Indeed, the English forum selection clauses "plainly

demonstrate[ ] that the parties intended" to litigate any disputes in connection with the Saphir

Notes and related derivate transactions in England. See Mobil Sales, 1998 WL 196194, at *11.

     Finally, the greatest private interest factor may be the effect on BNY and Perpetual of

having this litigation proceed in this Court.[23] The absence of Perpetual, a critical interested

party, and the manifest risk of subjecting BNY to conflicting judgments, leave no doubt as to the

interests of these parties in having this litigation proceed in England. See Pollux Holding, 329

F.3d at 75. LBSF cannot claim any concern of comparable magnitude. Consideration of private

interest factors therefore supports dismissal on grounds of *forum non conveniens*.

---

[23] The private interest factors include consideration of the problems posed by the inability to join parties in interest.
See Piper, 454 U.S. at 259.

### 2. **Public Interest Factors**

Public interest factors include the interest in having localized controversies decided at home and in avoiding difficulties in conflict of laws and the application of foreign law.  See, e.g., Aguinda, 303 F.3d at 480 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-509 (1947)).  Recognizing that this Court has an interest in matters affecting this bankruptcy case and application of the Bankruptcy Code, such interest should not prevent dismissal in favor of a more appropriate forum.  The English courts have a long history of respecting and applying American law, including the Bankruptcy Code, see, e.g., Banque Indosuez SA v. Ferromet Resources Inc, *supra*, and there is great value in having an English court decide fundamental threshold issues of applicable English law.  See Pollux Holding, 329 F.3d at 76 (affirming trial court's dismissal on *forum non conveniens* grounds where English choice of law clause made it likely that English law would apply to contractual claims).  Public interests also weigh in favor of dismissal.

### D. **Summary Of *Forum Non Conveniens* Analysis**

The relevant factors overwhelmingly favor adjudication of the dispute between LBSF and Perpetual in England.  The Saphir transactions occurred there, the parties are there, and the assets are there.  Every aspect of the dispute is predominantly English or foreign, including the governing law.  The English Court stands ready to determine the issues in a judgment that will bind all the parties.  The English Court is not just an alternative forum, it is the more appropriate forum in which to decide the dispute between LBSF and Perpetual.  The Complaint should be dismissed on *forum non conveniens* grounds.

# III.
## THE COURT SHOULD ABSTAIN AS A MATTER
## OF INTERNATIONAL COMITY

If the adversary action is not dismissed, this Court should abstain from adjudicating the merits of this dispute, at least temporarily, as a matter of international comity.

As defined by Justice Gray in the oft-cited case of <u>Hilton v. Guyot</u>, 16 S.Ct. 139, 143 (1895):

> "Comity" in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

In this modern era of international law, comity means that in certain "international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction." <u>Turner Entertainment Co. v. Degeto Film GmbH</u>, 25 F.3d 1512, 1518 (11th Cir. 1994). Considerations of international comity may call for dialogue between the courts to discuss, *inter alia*, how to avoid conflicting decisions.

## A.      Comity Warrants Abstention And Communication With The English Court.

Bankruptcy does not negate considerations of comity. To the contrary, in 28 U.S.C. § 1334(c)(1), Congress expressly provided that "in the interest of justice, or in the interest of comity" bankruptcy courts may abstain "from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." This rule of "permissive abstention" applies where litigation is more appropriately pursued in a foreign jurisdiction. <u>See</u> <u>In re Regus Business Centre Corp.</u>, 301 B.R. 122, 127 (Bankr. S.D.N.Y. 2003). The decision whether to

abstain is within the sound discretion of the bankruptcy court.  <u>In re AHT Corp.</u>, 265 B.R. 379,

383 (S.D.N.Y. 2001).[24]

"The concept of international comity is based on the principle that giving due recognition

to acts and proceedings of foreign tribunals promotes international cooperation, strengthens

mutual ties, fosters reciprocal treatment and thereby enhances the rule of law on the international

scale, both within and among nations."  <u>Dow Jones & Co. v. Harrods, Ltd.</u>, 237 F. Supp. 2d 394,

444 (S.D.N.Y. 2002).

> The doctrine accordingly counsels that absent exceptional circumstances, a
> federal court in the exercise of its discretion should decline to assert jurisdiction
> and defer to the corresponding interest and laws of foreign tribunal adjudicating
> related disputes in proceedings involving the same parties over which they have
> proper jurisdiction.

<u>Id.</u>  Where the foreign proceeding is in a sister common law jurisdiction (such as England), with

procedures akin to our own, exceptions to the doctrine of comity are narrowly construed.

<u>Clarkson Co. v. Shaheen</u>, 544 F.2d 624, 630 (2d Cir. 1976).

By yielding jurisdiction here, this Court can ensure that all necessary parties, including

Perpetual, are present and afforded an opportunity to be heard, and avoid the recognized risk of

inconsistent judgments between two nations.[25]  Given the ability of the English Court to resolve

all of the pending issues, and congressional sanction of foreign proceedings in 28 U.S.C. § 1334

---

[24]  Abstention also is permissible under the Declaratory Judgment Act, as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."  <u>Public Service Commission v. Wycoff Co.</u>, 344 U.S. 237, 241 (1952).  A federal court, therefore, may abstain from hearing a Declaratory Judgment Act claim. <u>See</u> <u>Dow Jones & Co. v. Harrods Ltd.</u>, 346 F.3d 357, 359 (2d Cir. 2003) (district courts have discretion to "refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear"); <u>Cadle Co. v. Bankers Federal Savings FSB</u>, 929 F. Supp. 636, 638-639 (E.D.N.Y. 1996) (in suits brought under the Declaratory Judgment Act, "considerations of practicality and wise judicial administration" take precedence over the otherwise prevailing doctrine that federal courts should adjudicate claims within their jurisdiction).

[25]  "Courts also avoid unnecessary conflicts with other jurisdictions considering related actions involving the same parties, and defer to those forums where appropriate.  In so doing, they are mindful not only of the mutual respect that the corresponding tribunals should accord each other in the interest of fostering their shared missions and public functions of doing justice; but recognize that to that end nothing gainful would be served by unwarranted interference with the proper exercise of the court's jurisdiction."  <u>Dow Jones</u>, 237 F. Supp. 2d at 435.

and 11 U.S.C. § 1505, the existence of bankruptcy issues does not dictate that comity be abandoned.

Perhaps the best way to further the interests of comity and ensure proper application of U.S. bankruptcy law is for this Court to communicate directly with the English Court. "When possible, the two states should consult with each other. If one state has a clearly greater interest, the other should defer . . . ." Restatement (Third) of Foreign Relations § 403. Such communication is no less proper in bankruptcy cases. See, e.g., Stonington Partners, Inc. v. Lernout & Hauspie Speech Products, 310 F.3d 118, 133 (3d Cir. 2002) ("We strongly recommend, in a situation such as this, that an actual dialog occur or be attempted between the courts of the different jurisdictions in an effort to reach an agreement as to how to proceed or, at the very least, an understanding as to the policy considerations underpinning salient aspects of the foreign laws."); see also Maxwell Commc'ns Corp. plc v. Societe Generale (In re Maxwell Commc'ns Corp. plc), 93 F.3d 1036, 1053 (2d Cir. 1996) (noting with approval the high level of cooperation between the U.S. and English courts in pursing harmonization of their laws).

Indeed, this Court endorsed such communications and coordination in its June 17, 2009, Order Approving the Proposed Cross-Border Insolvency Protocol for the Lehman Brothers Group of Companies (the "Protocol Order") (D.I. 4020 filed in underlying bankruptcy case, Case No. 08-13555), granting the Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code for Approval of a Cross-Border Insolvency Protocol (the "Protocol Motion") (D.I. 3467 filed in underlying bankruptcy case, Case No. 08-13555). The Protocol Order approves the Protocol[26] in all respects and expressly approves the ALI Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases (the "Guidelines"). In the Protocol

---

[26] The Protocol is attached as Exhibit B to the Protocol Motion.

Motion, LBSF argued that "cooperation and communication among Tribunals, where possible, would enable effective case management and consistency of judgments."  Protocol Motion ¶ 10 at 4; see also Protocol at 2.  The Protocol Motion also argued for direct communications between Courts, see Protocol Motion ¶ 22(c) at 10, and the Protocol promotes direct communications, international coordination, and comity.  See Protocol § 1.4 at 3.

More specifically, the Guidelines state:  "A Court may communicate with another Court in connection with matters relating to proceedings before it for the purpose of coordinating and harmonizing proceedings before it with those in the other jurisdiction."  Guideline 2.  The Guidelines set forth procedures for inter-Court communications and, when appropriate, joint hearings.  See, e.g., Guidelines 5-9, 12.  Guideline 15 provides:  "A Court may communicate with a Court in another jurisdiction . . . for purposes of coordinating and harmonizing proceedings before it with proceedings in the other jurisdiction regardless of the form of the proceedings before it or before the other Court whenever there is commonality among the issues and/or the parties in the proceedings."

On the facts presented, comity warrants abstention.  In furtherance of the goals of comity, however, and to prevent inconsistent judgments, comity also favors direct communication between this Court and the English Court.

**B.      Absent Dismissal, This Adversary Proceeding Should Be Stayed.**

Coordination between tribunals may lead to a conclusion that the best course for this Court is temporary abstention by means of a stay.  With the English Action scheduled for trial in July, it may be prudent for this Court to await the English Court's decision before acting.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. North American Co., 299 U.S. 248, 254 (1936); accord

<u>Tradewinds Airlines, Inc. v. Soros</u>, No. 08 Civ. 5901(JFK), 2009 WL 435298, at *3 (S.D.N.Y. Feb. 23, 2009).  The decision to issue a stay is within the court's discretion.  <u>Soros</u>, 2009 WL 435928, at *3.

The factors relevant in determining whether to issue a stay are: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interest of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."  <u>Id.</u> (quoting <u>Kappel v. Comfort</u>, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).

A temporary stay may be particularly appropriate in administering international matters. In <u>Borden, Inc. v. Meiji Milk Products Co.</u>, 919 F.2d 822 (2d Cir. 1990), the Court of Appeals considered the interplay of a motion for a preliminary injunction and a Japanese arbitration dealing with the same intellectual property issues.  Although the U.S. court recognized Japan as an acceptable alternative forum, it was uncertain whether the Japanese tribunal could act promptly.  The U.S. court therefore agreed to defer ruling on the request for a preliminary injunction for sixty days so as to give the Japanese tribunal an opportunity to act.  <u>Id</u>. at 829.

In this case, the English Court is an acceptable alternative forum and it is prepared to act promptly.  The decision of the English Court could significantly reduce, or wholly resolve, issues before this Court, and in doing so reduce or eliminate the risk of multiple, inconsistent judgments.  On all the facts presented here, if this case is not dismissed, a stay is appropriate.

## CONCLUSION

BNY is a bystander in a race between LBSF and Perpetual to obtain a judgment directing BNY to deliver the Net Proceeds. BNY's interest now is to avoid being subject to inconsistent rulings by different courts. For that reason, BNY respectfully requests that this Court enter an order (i) dismissing the Complaint for failure to join a necessary party; (ii) dismissing the Complaint on grounds of *forum non conveniens*; or (iii) alternatively, abstaining from adjudicating the merits of the dispute or staying proceedings pending determination of the issues in the English Action; and (iv) granting such other and further relief as this Court deems just and proper.

Dated:  June 22, 2009
      New York, New York

**REED SMITH LLP**

*s/ Michael J. Venditto*
Eric A. Schaffer
Michael J. Venditto
David M. Schlecker
599 Lexington Avenue
New York, New York 10022
Tel.:  212.521.5400
Fax:  212.521.5450

*Attorneys for BNY Corporate Trustee*
*Services, Ltd.*