REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel.: 212.521.5400
Fax: 212.521.5450
    Eric A. Schaffer
    Michael J. Venditto
    David M. Schlecker

*Attorneys for BNY Corporate Trustee Services, Ltd.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., et al. | Case No. 08-13555 (JMP) |
| Debtors. | |
| LEHMAN BROTHERS SPECIAL FINANCING INC., | |
| Plaintiff, | Adv. Proc. No. 09-01242 (JMP) |
| - against - | |
| BNY CORPORATE TRUSTEE SERVICES LIMITED, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF BNY CORPORATE TRUSTEE SERVICES LIMITED FOR LEAVE TO APPEAL THE AUGUST 12, 2009 ORDER DENYING BNY'S MOTION TO DISMISS**

Dated: August 24, 2009

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................... 6

A. LBSF Defaults On Credit Default Swap Agreements With Saphir, The Issuer Of The Saphir Notes Held By Perpetual, When It Files For Bankruptcy ............................... 6

B. In Response To The Default, Saphir Redeems The Saphir Notes, Which Sets In Motion The Possible Enforcement Both Of BNY's Security Interest In The Underlying Collateral And BNY's Duty To Distribute The Resulting Proceeds .............. 8

C. Perpetual, Refusing To Provide The Mandated Indemnification To BNY, Files An Action Against BNY In England Seeking Priority Of Payment On The Saphir Notes ................................................................................................................................. 9

D. One Week Later, LBSF Files A Similar Action Against BNY In The Bankruptcy Court Seeking A Contrary Declaration That LBSF Is Entitled To Priority Of Payment On The Saphir Notes ............................................................................................ 10

E. LBSF Intervenes In The English Action And Presents Its Arguments For Why It, Not Perpetual, Is Entitled To Priority, But The English Court Rejects LBSF's Arguments And Enters Judgment Compelling Payment On The Saphir Notes To Perpetual ......................................................................................................................... 10

F. Because Perpetual Is Not A Party To LBSF's Bankruptcy Proceeding, And Because BNY Faces Potentially Conflicting Obligations On The Saphir Notes, BNY Moves To Dismiss LBSF's Priority Action Under Fed. R. Civ. P. 19, *Forum Non Conveniens*, And International Comity .................................................................... 12

G. The Bankruptcy Court Concedes Perpetual's Material Interest In The Bankruptcy Proceeding, But Denies BNY's Motion On The Grounds That BNY Has Been Directed And Indemnified To Litigate A Similar Priority Issue For Another Party In The Separate And Independent *Aflac* Action ............................................................. 14

LEAVE TO APPEAL SHOULD BE GRANTED ON THE RULE 19 AND INTERNATIONAL COMITY ISSUES ........................................................................................ 15

A. Standards For Granting A Motion For Leave To Appeal An Interlocutory Bankruptcy Court Order ................................................................................................... 15

B.    The Bankruptcy Court's Order Denying BNY's Motion Based On Rule 19 Raises Questions That Meet The Criteria For Certifying An Interlocutory Appeal .................... 16

     1.    Whether Rule 19 Requires Dismissal Of LBSF's Action Due To Perpetual's Absence Presents A Controlling Question Of Law .......................... 16

           a.    Whether Perpetual is a "required party" under Rule 19(a) is a question of law that can be "quickly and cleanly" determined ................ 17

           b.    Whether the action should proceed without Perpetual or be dismissed under Rule 19(b) is a question of law that can be "quickly and cleanly" determined ............................................... 19

                 (i)    Rule 19(b)(1)—A judgment rendered in Perpetual's absence would prejudice Perpetual and BNY .............................. 19

                 (ii)   Rule 19(b)(2)—The prejudice that would result from a judgment in Perpetual's absence cannot be lessened ................... 19

                 (iii)  Rule 19(b)(3)—A judgment rendered in Perpetual's absence would not be adequate ...................................... 19

                 (iv)   Rule 19(b)(4)—LBSF already has an adequate remedy in lieu of any it might secure in the adversary proceeding:  a full and fair opportunity to contest Perpetual's claim to Noteholder Priority in the English Action ................................... 20

           c.    Whether Rule 19 requires a dismissal is "controlling" because it is dispositive of LBSF's action .................................... 21

     2.    There Is Substantial Ground For A Difference Of Opinion Over The Correctness Of The Bankruptcy Court's Order Denying BNY's Rule 19 Motion ............................................................. 22

     3.    Immediate Review Of The Order Denying BNY's Rule 19 Motion May Materially Advance The Ultimate Termination Of This Litigation Because A Reversal Of The Bankruptcy Court's Order Very Likely Will Result In A Dismissal Of LBSF's Action .......................................... 26

     4.    Immediate Review Is Called For Given Rule 19's Fundamental Role In Promoting Fair And Just Adjudications ............................... 27

C.    The Bankruptcy Court's Order Denying BNY's Motion To Dismiss Based On International Comity And Deference To The First-Filed English Action Raises Questions That Meet The Criteria For Certifying An Interlocutory Appeal .................... 29

# TABLE OF CONTENTS

1.      Whether International Comity Requires The Dismissal Of LBSF's Action
        Due To The First-Filed English Action—Which Already Has Resulted In
        A Judgment In Perpetual's Favor—Presents A Controlling Question Of
        Law ........................................................................................................... 29

2.      There Is Substantial Ground For A Difference Of Opinion Over The
        Correctness Of The Bankruptcy Court's Order Denying BNY's Request
        For Dismissal Based On International Comity And First-Filed Principles .......... 31

3.      Immediate Review Of The Bankruptcy Court's Order Denying BNY's
        International Comity Motion May Materially Advance The Ultimate
        Termination Of This Litigation Because A Reversal Of The Bankruptcy
        Court's Order Very Likely Will Result In A Dismissal Of LBSF's Action ......... 31

4.      Immediate Review Is Called For To Foster Proper Respect For Foreign
        Adjudications And To Avoid A Multiplicity Of Conflicting Lawsuits ................ 32

CONCLUSION ......................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

*United States Cases*

Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.,
    2007 WL 633951 (S.D.N.Y. Feb. 26, 2007) ....................................................30

Alfadda v. Fenn,
    966 F. Supp. 1317 (S.D.N.Y. 1997) ..............................................................30

Bank of N.Y. v. FDIC,
    508 F.3d 1 (D.C. Cir. 2007) ..........................................................................25

Benger Labs. Ltd. v. R.K. Laros Co., Inc.,
    24 F.R.D. 450 (E.D. Pa. 1959) ..................................................................26, 28

Burka v. Aetna Life Ins. Co.,
    87 F.3d 478 (D.C. Cir. 1996) ........................................................................28

China Trade & Dev. Corp. v. M.V. Choong Yong,
    837 F.2d 33 (2d Cir. 1987) ............................................................................30

Clarkson Co. v. Shaheen,
    544 F.2d 624 (2d Cir. 1976) ..........................................................................30

Dore Energy Corp. v. Prospective Inv. & Trading Co. Ltd.,
    570 F.3d 219 (5th Cir. 2009) ........................................................................28

Dow Jones & Co. v Harrods, Ltd.,
    237 F. Supp. 2d 394 (S.D.N.Y. 2002) ......................................................29, 32

English v. Seaboard Coast Line R.R. Co.,
    465 F.2d 43 (5th Cir. 1972) ..........................................................................28

FDIC v. Bank of N.Y.,
    479 F. Supp. 2d 1 (D.D.C. 2007) ..................................................................25

Fletcher Aircraft Co. v. Bond,
    77 F.R.D. 47 (C.D. Cal. 1977) ......................................................................27

Ford v. Brown,
    319 F.3d 1302 (11th Cir. 2003) ....................................................................29

Global Disc. Travel Servs., LLC v. Trans World Airlines, Inc.,
    960 F. Supp. 701 (S.D.N.Y. 1997) ................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft,
    491 F.3d 355 (8th Cir. 2007) ........................................................... 32

Hanson v. Denckla,
    357 U.S. 236 (1958) ........................................................... 27

Herron v. Keene Corp.,
    751 F.2d 873 (6th Cir. 1985) ........................................................... 28

Hoheb v. Muriel,
    753 F.2d 24 (3d Cir. 1985) ........................................................... 28

In re Enron Corp.,
    2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ........................................................... passim

In re Kassover,
    343 F.3d 91 (2d Cir. 2003) ........................................................... 15

In re Parikh,
    2009 WL 2383032 (E.D.N.Y. July 30, 2009) ........................................................... 15

Lerner v. Millenco, L.P.,
    23 F. Supp. 2d 345 (S.D.N.Y. 1998) ........................................................... 26

Parkson Corp. v. Fruit of the Loom, Inc.,
    1992 WL 541570 (E.D. Ark. Dec. 10, 1992) ........................................................... 28

Presbyterian Church of Sudan v. Talisman Energy, Inc.,
    2005 WL 2082847 (S.D.N.Y. Aug. 30, 2005) ........................................................... 16

Primavera Familienstifung v. Aksin,
    139 F. Supp. 2d 567 (S.D.N.Y. 2001) ........................................................... 21

Pujol v. Shearson/American Express, Inc.,
    877 F.2d 132 (1st Cir. 1989) ........................................................... 27

Rapoport v. Banco Mexicano Somex, S.A.,
    668 F.2d 667 (2d Cir. 1982) ........................................................... 3, 17, 19, 22-23

Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.,
    350 F. Supp. 2d 369 (S.D.N.Y. 2004) ........................................................... 32

# TABLE OF AUTHORITIES

Page(s)

Republic of the Phillipines v. Pimentel,
 -- U.S. --, 128 S. Ct. 2180 (2008) ..........................................................................17, 20, 27

Roby v. Corp. of Lloyd's,
 996 F.2d 1353 (2d Cir. 1996) ..............................................................................20, 30, 32

Scheiner v. Wallace,
 832 F. Supp. 687 (S.D.N.Y. 1993) ...................................................................................30

Sibbach v. Wilson & Co.,
 312 U.S. 1 (1941) ................................................................................................................5

Soc'y of Lloyd's v. Edelman,
 2005 WL 639415 (S.D.N.Y. March 21, 2005) ............................................................20, 30

Spiro v. Parker Brothers,
 1992 WL 197405 (S.D.N.Y. Aug. 4, 1992) ................................................................17, 20

St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.,
 664 F. Supp. 824 (S.D.N.Y. 1987) ...................................................................................28

Staehr v. Hartford Fin. Servs. Grp.,
 547 F.3d 406 (2d Cir. 2008) ...............................................................................................5

Straus v. Am. Publishers' Ass'n,
 201 F. 306 (2d Cir. 1912) .................................................................................................30

Tick v. Cohen,
 787 F.2d 1490 (11th Cir. 1986) ........................................................................................28

U.S. v. Woodbury,
 263 F.2d 784 (9th Cir. 1959) ............................................................................................28

Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.,
 485 F.2d 78 (4th Cir. 1973) ..............................................................................................28

Weber v. King,
 10 F. Supp. 2d 124 (E.D.N.Y. 2000) ...............................................................................17

Wichita & Affiliated Tribes of Okla. v. Hodel,
    788 F.2d 765, 774 (D.C. Cir. 1986) ................................................................. 17

*English Cases*

Alsop Wilkinson v. Neary
    [1995] 1 All ER 431 .......................................................................................25

Banque Indosuez SA v. Ferromet Resources, Inc.,
    [1993] BCLC 112 .............................................................................................21

MCC Proceeds Inc. v. Bishopgate Investment Trust Plc & Ors.,
    [1999] C.L.C. 417 .............................................................................................21

*Federal Statutes and Rules*

11 U.S.C. § 362 ......................................................................................................... 21

11 U.S.C. § 362(a) ................................................................................................... 10

11 U.S.C. § 365(e) ................................................................................................... 10

11 U.S.C. § 541(c)(1)(B) ......................................................................................... 10

11 U.S.C. § 1505 ............................................................................................... 20, 21

28 U.S.C. § 158 (a)(3) ............................................................................................... 1

28 U.S.C. § 1292 ..................................................................................................... 28

28 U.S.C. § 1292(b) ...................................................................................... *passim*

Fed. R. Bankr. P. 8003(a) ......................................................................................1

Fed. R. Civ. P. 19 ......................................................................................... *passim*

Fed. R. Civ. P. 19(a) .............................................................................................17

Fed. R. Civ. P. 19(a)(1) .........................................................................................17

Fed. R. Civ. P. 19(b) .......................................................................................19, 22

Fed. R. Civ. P. 19(b)(1)-(4)................................................................................19, 20

# TABLE OF AUTHORITIES

**Page(s)**

*Legislative History*

Sen. Rep. No. 2434, 85th Cong., 2d Sess. (1958 U.S.C.C.A.N., p. 5255) ................................... 28

*Other Authorities*

Discretionary Appeals of District Court Interlocutory Orders: A Guided Tour
    Through Section 1292(b) of the Judicial Code,
    69 Yale L.J. 333 (1959) ............................................................................................22, 28

Charles Alan Wright, et al., 7 Fed. Prac. & Proc. Civ. 3d § 1602 (2009) ....................................27

Pursuant to 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8003(a), Defendant BNY Corporate Trustee Services Limited ("BNY") respectfully submits this Memorandum of Law in Support of its Motion for Leave to Appeal the Bankruptcy Court's August 12, 2009 order denying BNY's Motion for Dismissal of Complaint to the United States District Court for the Southern District of New York. Specifically, BNY seeks leave to appeal the Bankruptcy Court's order rejecting BNY's arguments for dismissal under Fed. R. Civ. P. 19 and international comity.

## PRELIMINARY STATEMENT

One question lies at the center of this adversary proceeding: whether plaintiff Lehman Brothers Special Financing Inc. ("LBSF") or non-party Perpetual Trustee Company Limited ("Perpetual") is entitled to priority of payment on approximately $70 million worth of notes, the collateral for which is held by BNY as trustee. That question, by virtue of the Bankruptcy Court's erroneous rejection of BNY's motion for dismissal under Rule 19 and international comity, is now subject to potentially conflicting determinations that could severely prejudice BNY, as well as Perpetual. This Court's immediate intervention is needed to forestall that prejudice.

To begin with, the priority of payment issue has been litigated in a lawsuit in England, where LBSF, Perpetual, and BNY all are parties. The High Court of Justice, Chancery Division, recently resolved the issue by entering judgment in favor of Perpetual, and LBSF has appealed that judgment. The Chancellor also noted BNY's indemnity rights in the course his judgment in that lawsuit.

Given that LBSF is attempting to litigate the same priority of payment issue in this adversary proceeding, Perpetual would seem to be the quintessential "required party"

within the meaning of Rule 19. A determination by the Bankruptcy Court that *LBSF*, and *not Perpetual*, is entitled to priority of payment on the notes surely would impair Perpetual's interests. And that determination, coupled with the English judgment that *Perpetual*, and *not LBSF*, is entitled to priority of payment on the same notes, plainly would subject BNY to multiple, conflicting judgments with respect to who should be paid.

Nevertheless, in direct contravention of Rule 19, the Bankruptcy Court denied BNY's motion for dismissal because LBSF failed to join Perpetual. The court elided the requisite Rule 19 analysis based on a single conclusion—that BNY could adequately protect non-party Perpetual's interests in litigating the priority of payment issue. The court rested this flawed conclusion on two grounds: first, that BNY had a trust relationship with Perpetual that required it to advance Perpetual's interests; and second, that BNY already was advocating a position helpful to Perpetual in a *separate* proceeding on behalf of a *different* noteholder with respect to *different* notes.

The Bankruptcy Court's logic breaks down on every front. As a matter of undisputed fact, BNY's and Perpetual's interests are antagonistic—Perpetual has refused to provide contractually mandated direction and indemnity to BNY in connection with the notes in this case and it has sued BNY in the English proceeding. Nor does the finding of a trust relationship comport with controlling English law. Moreover, the separate proceeding to which the Bankruptcy Court referred lacks any relevance to the Rule 19 issues—Rule 19 focuses on *this* proceeding and the prejudice it will engender for Perpetual and BNY. And, indeed, the other proceeding is distinguishable in several respects—each of which is material to the Rule 19 analysis. The noteholder there (unlike

Perpetual here) is a party.  And, the noteholder there (unlike Perpetual) has provided satisfactory direction and indemnity to BNY, without which BNY has no duty to act under English law.  Further, the other proceeding (unlike this one) presents no risk of conflicting judgments because there is no parallel foreign proceeding.  Given these profound differences, the Bankruptcy Court's failure to apply Rule 19 should not stand and interlocutory review therefore is warranted.

BNY's Rule 19 argument—that the action should be dismissed because Perpetual is a "required party" whose joinder is not feasible[1]—meets 28 U.S.C. § 1292(b)'s settled criteria for immediate interlocutory appeal:

- **First**, whether LBSF's action should be dismissed under Rule 19 presents a "controlling question of law" because it raises "pure[ ] legal issues" (See Declaration of Eric A. Schaffer in Support of BNY's Motion for Leave to Appeal ("Schaffer Dec."), Ex. A (Transcript of August 11, 2009 Oral Argument Before the Honorable James M. Peck on BNY's Motion for Dismissal of Complaint ("Aug. 11, 2009 Oral Arg. Tr."), p. 66:16-17 (Peck, J.))), which can be adjudicated on the basis of undisputed facts and without any need to delve into a dense factual record.  Id. (noting that "we're not dealing with discovery or witnesses or evidence" (Peck, J.));

- **Second**, there is a "substantial ground for a difference of opinion" over the correctness of the Bankruptcy Court's refusal to apply Rule 19 given the infeasibility of joining Perpetual.  This difference of opinion arises from settled caselaw interpreting Rule 19's requirements as they relate to the U.S. and English proceedings, as well as a square conflict with the Second Circuit's controlling decision in Rapoport v. Banco Mexicano Somex, S.A., 668 F.2d 667 (2d Cir. 1982) and applicable English law; and

---

[1] LBSF consistently has taken the position in this proceeding that it did not sue Perpetual because the Bankruptcy Court lacks personal jurisdiction over Perpetual.  See infra., p. 19 n.7.

- **Third**, this Court's immediate review and adoption of BNY's argument under Rule 19 meets the third criterion for leave to appeal because immediate review of the Bankruptcy Court's order may "materially advance the ultimate termination of the litigation" due to a probable reversal by this Court, which likely would entail an order dismissing LBSF's action against BNY.

The same result should follow, moreover, on BNY's argument that settled international comity principles require dismissal of the bankruptcy proceeding in favor of the English action. As with Rule 19, this comity argument is well-briefed, presented on an undisputed record, and supports dismissal of LBSF's action. Looking again at the certification criteria:

- **First**, whether it is reversible error for the Bankruptcy Court not to defer to a first-filed English proceeding involving the same parties, transactions, documents, and threshold issue—particularly where English courts provide adequate adjudicatory processes and where the particular English court already has rendered a judgment following a trial with ***all*** parties present—is a controlling question of law;

- **Second**, there are substantial grounds on which to disagree with the Bankruptcy Court's failure to dismiss based on recognized comity principles because this Court's own precedent and the fundamental public policies underlying respect for foreign judgments compel dismissal on facts like those presented here; and

- **Third**, this Court's reversal on the basis of comity again very likely will lead to a dismissal, thereby "materially advancing the termination of this action."

Here, moreover, the need for this Court's immediate intervention is particularly acute. The priority of payment issue resolved in the English proceeding and presented in this adversary proceeding is of enormous import to the financial services industry worldwide. In the immediate aftermath of the Bankruptcy Court's order, structured

finance and securitization observers expressed serious concerns about a potential seismic shift of billions of dollars of liabilities if LBSF prevails on the merits of its lawsuit.[2] Given the significance of the interests and policies that are impacted by this case, the priority of payment issue should not be adjudicated by the Bankruptcy Court until the procedural bars to such an adjudication are settled.

The Bankruptcy Court's refusal to dismiss based on Rule 19 and international comity principles also reaches core issues fundamental to the orderly process of adjudication. Despite the size and complexity of the Lehman bankruptcy, the Bankruptcy Court still is obligated to follow Rule 19 and principles of comity—indeed, Rule 19, promulgated "within the power delegated to [the Supreme] Court[,] has the force of a federal statute." Sibbach v. Wilson & Co., 312 U.S. 1, 13 (1941). It is therefore supreme federal law and its limits and requirements must be heeded. Yet, the Bankruptcy Court has paved the way for conflicting judgments, for Perpetual to lose the rights it acquired under the English judgment, for BNY to be subject to double liability, and for the subordination of the English judgment. In these circumstances, the need to uphold the procedural protections of Rule 19 and to respect the foreign judgment are particularly

---

[2] See Schaffer Dec., Ex. B (www.emmi.com (Euromoney Institutional Investor), Lehman Victory Could Hurt CDO Ratings: Fitch, dated August 18, 2009 (according to Kevin Kendra, a managing director at Fitch, "if Lehman wins in the U.S.[,] . . . Fitch would limit the ratings it gives on notes sold from CDOs [Collateralized Debt Obligations] backed by credit default swaps to that of the CDS counterparty, when the counterparty could be subject to bankruptcy proceedings in the U.S.")); id., Ex. C (www.housingwire.com, Lehman Case Will Affect CDO Ratings, Says Fitch, dated August 14, 2009 ("'A final outcome favorable to the Lehman bankruptcy estate (Lehman) could have implications not only for synthetic CDOs, but for global [structured finance] transactions generally due to the widespread use of the subordination provisions within securitization structures,'" Fitch said in a report Friday.")). This Court can take judicial notice of the fact of these articles and the observations contained in them. See Staehr v. Hartford Fin. Servs. Grp., 547 F.3d 406, 425 (2d Cir. 2008) ("it is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents").

acute.[3]

Accordingly, BNY respectfully requests that this Court grant its motion for leave to appeal and reverse the Bankruptcy Court's erroneous ruling.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.     LBSF Defaults On Credit Default Swap Agreements With Saphir, The Issuer Of The Saphir Notes Held By Perpetual, When It Files For Bankruptcy.**

On October 10, 2002, BNY, then known as J.P. Morgan Corporate Trustee Services Limited, as trustee, and Dante Finance Public Limited Company ("Dante"), as issuer, entered into a Principal Trust Deed (as subsequently amended and restated on a number of occasions, the "Principal Trust Deed").  See Schaffer Dec., Ex. D (LBSF's Complaint, Ex. A).  The transactions arose in connection with the Dante Programme, a multi-issuer secured obligation program arranged by LBSF's English affiliate, Lehman Brothers International (Europe) ("LBIE").  Id.  This structure was used by Lehman entities to issue various series of synthetic collateralized debt obligations ("CDOs").[4]

Under the Dante Programme, LBIE created Saphir Finance Public Limited Company ("Saphir"), a special purpose entity formed in Ireland, to issue multiple series

---

[3] Exacerbating the impairment of all of these rights and interests is the speed with which the Bankruptcy Court may adjudicate the underlying merits of LBSF's challenge to the enforceability of the provisions deeming bankruptcy to be an event of default giving rise to priority in favor of Perpetual. Contemporaneous with its Motion for Leave to Appeal, BNY will seek a stay from the Bankruptcy Court to delay this result at least until its Motion for Leave is resolved.  Without a stay, the Bankruptcy Court may in effect seek to force BNY to defend Perpetual's interest despite the fact that English law places no such obligation on BNY in these circumstances.  The stay also seeks to prevent the Bankruptcy Court from resolving these significant questions of contract and bankruptcy law in conflict with the English judgment and without assurance that its adjudication is anything but *ultra vires* given the Rule 19 problem.

[4] A CDO is a security backed by a pool of debt, which may consist of corporate bonds or loans.  A "synthetic" CDO is a form of CDO that is based on a credit default swap rather than physical ownership of debt securities.  This structure enabled LBSF to bundle securities into tranches with the same rating, so that purchasers of the notes could focus on the rating rather than the issuer of the bond.  As described below, the issuer was a special purpose entity created by LBSF to (i) enter into a credit default swap with LBSF and (ii) issue the notes that LBSF sold.

of synthetic CDO notes. <u>See</u> Schaffer Dec., Ex. E (Declaration of Sanjay Jobanputra in Support of BNY's Motion for Dismissal ("Jobanputra Dec."), ¶ 3). This adversary proceeding involves two such series of Australian Dollar CDO notes: the Series 2004-11 and Series 2006-5 synthetic portfolio notes (the "<u>Saphir Notes</u>"). <u>Id.</u>, Ex. D (Complaint, Ex. B, Supplemental Trust Deed and Drawdown Agreement for Series 2004-11 Notes (the "<u>Series 2004-11 Supp. Deed</u>"); Complaint, Ex. D, Supplemental Trust Deed and Drawdown Agreement for Series 2006-5 Notes (the "<u>Series 2006-5 Supp. Deed</u>") (together with the Series 2004-11 Supp. Deed, the "<u>Supp. Deeds</u>"))).

Perpetual, which itself acts as a trustee for a LBSF-created investment vehicle (the "Mahogany Series Trust"), holds the Saphir Notes in its capacity as trustee. <u>See</u> Schaffer Dec., Ex. E (Jobanputra Dec., ¶¶ 17, 18).[5] The Saphir Notes are secured by certain collateral held by BNY, in its capacity as trustee, in England and Australia (the "<u>Saphir Collateral</u>"). <u>See</u> Schaffer Dec., Ex. E (Jobanputra Dec., ¶¶ 6, 7, 9).

For its part, Saphir used funds paid by the purchasers of the Saphir Notes to purchase the Saphir Collateral. At the same time, Saphir entered into certain credit default swaps with LBSF as the counterparty. <u>See</u> Schaffer Dec., Ex. D (Complaint, Ex. D, ISDA Master Agreement); <u>id.</u>, Ex. F (Declaration of Michael J. Venditto in Support of BNY's Motion for Dismissal ("Venditto Dec."), Exs. 2 and 3 (Schedules related to ISDA Master Agreement, as amended and restated January 30, 2004 (in connection with the Series 2004-11 Saphir Notes), and July 21, 2006 (in connection with the Series 2006-5 Saphir Notes) (collectively, the "<u>Swap Agreements</u>"))).

---

[5] The Mahogany Series Trust is an investment program sponsored by the Debtors. <u>See</u> Schaffer Dec., Ex. E (Jobanputra Dec., ¶ 17). The beneficiaries of Mahogany are the ultimate parties in interest with respect to the claims raised by LBSF in this adversary proceeding. <u>Id.</u> Unless otherwise indicated, references to Perpetual in this Memorandum are to Perpetual in its role as the Mahogany trustee.

The Swap Agreements authorized early termination if either of the parties or the credit support provider, Lehman Brothers Holdings, Inc.'s ("LBHI"), filed for bankruptcy.  <u>See</u> Schaffer Dec., at Ex. D (Complaint, Ex. D, ISDA Master Agreement § 5(a)(vii)).  On September 15, 2008, LBHI filed for bankruptcy protection under Chapter 11, an event of default under the Swap Agreements.  <u>Id.</u> (Complaint, ¶ 11).  On October 3, 2008, LBSF filed its own bankruptcy petition, a separate event of default.  <u>Id.</u>

Therefore, on December 1, 2008, Saphir exercised its right to early termination of the Swap Agreements by sending LBSF a Form of Early Termination Notice.  <u>See</u> Schaffer Dec., Ex. D (Complaint, Exs. F and G, Form of Early Termination Notices).

**B.  In Response To The Default, Saphir Redeems The Saphir Notes, Which Sets In Motion The Possible Enforcement Both Of BNY's Security Interest In The Underlying Collateral And BNY's Duty To Distribute The Resulting Proceeds.**

Termination of the Swap Agreements entitled Saphir to redeem the Saphir Notes held by Perpetual.  <u>See</u> Schaffer Dec., Ex. D (Complaint, Ex. D, ISDA Master Agreement, §§ 5(a)(vii), 6(a)).  The source of the funds needed to pay the Saphir Notes is the Saphir Collateral held by BNY.  <u>See</u> Schaffer Dec., Ex. E (Jobanputra Dec., ¶¶ 11, 12).  BNY, in its capacity as the trustee, has security interests in and control over the Saphir Collateral, which is located in a custody account in England and a deposit account in Australia.  <u>See</u> Schaffer Dec., Ex. E (Jobanputra Dec., ¶¶ 11-13).  Subject to satisfactory indemnification in accordance with the governing documents, BNY therefore may be obligated to enforce these security interests and distribute the net proceeds from the Collateral (the "<u>Net Proceeds</u>") according to one or the other of the two priority distribution schemes set forth in the Principal Trust Deed.  <u>See</u> Schaffer Dec., Ex. A (Complaint, Ex. A, Principal Trust Deed, §§ 5.5, 5.6, 6.2).

The first such distribution scheme, called "Swap Counterparty Priority," provides that Net Proceeds are paid to LBSF, until its claims under the Swap Agreements are fully satisfied, before any distributions are made to Noteholders.  See Schaffer Dec., Ex. D (Complaint, Ex. A, Principal Trust Deed, § 6.2(i)).  The second, called "Noteholder Priority," applies when there has been a default by the Swap Counterparty.  It requires that the Net Proceeds be used to fully repay the Noteholders' obligations before any distribution is made to LBSF.  See Schaffer Dec., Ex. D (Complaint, Ex. A, Principal Trust Deed, § 6.2(iii)).  The Supplemental Trust Deeds obligate BNY to distribute the Net Proceeds in accordance with either Swap Counterparty Priority or Noteholder Priority, depending on the circumstances.  See Schaffer Dec., Ex. D (Complaint, Ex. C, Series 2006-5 Supp. Deed, § 5.5.1).

The dispute between LBSF and Perpetual that underlies both this adversary proceeding and the English lawsuit is over these Net Proceeds.  LBSF claims that it should receive the Net Proceeds to satisfy obligations that Saphir owed under the credit default swap.  Perpetual asserts that it should receive the Net Proceeds to satisfy obligations owed under the Saphir Notes.

## C.    Perpetual, Refusing To Provide The Mandated Indemnification To BNY, Files An Action Against BNY In England Seeking Priority Of Payment On The Saphir Notes.

On May 13, 2009, Perpetual filed an action against BNY in England, seeking the equivalent of a declaratory judgment that BNY is required to make payment pursuant to Noteholder Priority.[6]  See Perpetual Trustee Company Limited, Claimant, against BNY

---

[6]  The parties to the governing documents (including LBSF as Swap Counterparty) each submitted to the jurisdiction of the Courts of England to adjudicate disputes arising in connection with the documents and the Saphir Notes.  See Schaffer Dec., Ex. D (Complaint, Ex. A, Principal Trust Deed, § 20.2; Complaint, Exs. B and C, Supp. Deeds, § 14.2; Complaint, Ex. D, ISDA Master Agreement, § 13(b)(i).

<u>Corporate Trustee Services Limited, 1st Defendant and Lehman Brothers Special</u>

<u>Financing Inc., 2nd Defendant</u>, High Court of Justice, Chancery Division, Claim

No. HC09C01612 (the "English Action").  Perpetual maintained that Noteholder Priority

distribution was triggered as a result of LBHI's and LBSF's bankruptcy filings.  <u>See</u>

Schaffer Dec., Ex. D (Complaint, Ex. H, CPR Part 8 Claim Form, ¶¶ 4(3), 4(5)).  In

addition, Perpetual has disputed BNY's indemnity rights, and Perpetual and BNY still

have not agreed on the scope of these rights.

**D.      One Week Later, LBSF Files A Similar Action Against BNY In The
         Bankruptcy Court Seeking A Contrary Declaration That LBSF Is Entitled
         To Priority Of Payment On The Saphir Notes.**

One week later, on May 20, LBSF filed this adversary proceeding against BNY

alone.  In its Complaint, LBSF seeks a declaratory judgment (i) requiring BNY to make

payment pursuant to Swap Counterparty Priority and (ii) that giving effect to Noteholder

Priority would contravene the Bankruptcy Code.  <u>See</u> Schaffer Dec., Ex. D (Complaint,

pp. 11-12, Prayer for Relief).  LBSF claims that the provisions in the Swap Agreements

that provide for Noteholder Priority are unenforceable under 11 U.S.C. §§ 541(c)(1)(B)

and 365(e)(1) because they penalize and deter filing for bankruptcy.  <u>Id.</u> (Complaint, ¶ 2).

LBSF also claims that the provisions violate the automatic stay arising out of the LBSF

bankruptcy under 11 U.S.C. § 362(a).  <u>Id.</u> (Complaint, ¶ 3).

**E.      LBSF Intervenes In The English Action And Presents Its Arguments For
         Why It, Not Perpetual, Is Entitled To Priority, But The English Court
         Rejects LBSF's Arguments And Enters Judgment Compelling Payment On
         The Saphir Notes To Perpetual.**

The same day it filed the adversary proceeding against BNY, LBSF moved to

intervene in the English Action and sought a stay of that action pending adjudication of

the adversary proceeding.  LBSF's intervention was not contested by Perpetual or BNY

and was granted by the English Court on May 21, 2009.  See Schaffer Dec., Ex. F

(Venditto Dec., Ex. 6, Part 8 Claim Minute of Order, dated May 21, 2009, issued in the

English Action).

In the English Action, LBSF similarly argued that the Swap Agreement

provisions mandating Noteholder Priority in the event of a bankruptcy are unenforceable

under the Bankruptcy Code and violate the automatic stay—the same positions it takes in

the adversary proceeding.  See Schaffer Dec., Ex. G (Lyons Dec., Ex. C, LBSF's

Skeleton Argument in English Action, p. 4).  LBSF also contended that the provisions are

unenforceable under the so-called "anti-deprivation" principle of English law which, in

LBSF's view, invalidates contractual provisions that alter the rights of a debtor so as to

remove assets from the debtor's estate to the prejudice of its creditors.  Id. (Lyons Dec.,

Ex. C, LBSF's Skeleton Argument, p. 8).

The English High Court conducted a three-day trial in early July in which LBSF,

Perpetual, and BNY were represented by counsel.  See Schaffer Dec., Ex. G (Lyons

Dec., ¶ 7).  The trial focused on whether the Swap Agreement provisions calling for

Noteholder Priority were valid and enforceable under English law or, as LBSF argued,

unenforceable under the English anti-deprivation rule.  Id. (Lyons Dec., ¶ 8).  On July 28,

the High Court entered a judgment holding that there was no violation of the "anti-

deprivation" principle and further finding that Noteholder Priority had taken effect prior

to the filing of LBSF's Chapter 11 case and was valid and enforceable under English law.

Id. (Lyons Dec., Ex. B (English Judgment ¶ 49 ("Accordingly I do not think there can be

any doubt that an event of default, as defined, arose on 15th September 2008, Lehman

BSF was the defaulting party in respect of it and that that was an event other than the insolvency of Lehman BSF."); id. (Judgment ¶¶ 24(1), 45, 54-55)).

The High Court adjourned the issue of the extent of BNY's indemnity until after the hearing on LBSF's appeal, which LBSF filed on August 17. See Schaffer Dec., Ex. G (Lyons Dec., Ex. B (Judgment ¶¶ 63-64)); id., Ex. L (LBSF's Notice of Appeal in English Action).

F.  **Because Perpetual Is Not A Party To LBSF's Bankruptcy Proceeding, And Because BNY Faces Potentially Conflicting Obligations On The Saphir Notes, BNY Moves To Dismiss LBSF's Priority Action Under Fed. R. Civ. P. 19, *Forum Non Conveniens*, And International Comity.**

On June 22, 2009, BNY moved to dismiss LBSF's adversary action on several grounds, including the Rule 19 and comity arguments it now seeks leave to raise on appeal. See Schaffer Dec., Ex. H (Memorandum of Law in Support of BNY's Motion for Dismissal ("BNY Memo."), Dkt. No. 16, Adv. Proc. 09-01242). On Rule 19, BNY argued that Perpetual's interests could be impaired if the action resulted in a judgment that, contrary to the English judgment, LBSF was entitled to priority of payment on the Saphir Notes. BNY also argued that such a result, coupled with the English judgment in *Perpetual's* favor, would subject BNY to multiple, inconsistent obligations. Id. (BNY Memo., pp. 13-15). Since Perpetual's joinder in the bankruptcy proceeding was not feasible, Rule 19(b), and the principles of equity it furthers, dictated that the action should be dismissed. Otherwise, Perpetual and BNY stood to be substantially prejudiced; that prejudice could not be lessened by the court; a judgment in Perpetual's absence would be inadequate because it would not bind Perpetual and would be an incomplete disposition; and LBSF had an adequate remedy in the English Action. Id. (BNY Memo., pp. 16-18).

On comity, BNY pointed out that the first-filed English Action involved the same transactions, documents, and *all* of the required parties and therefore could effect a complete disposition of the controversy. Because the English Action already had resulted in a judgment following a full trial, the Bankruptcy Court should dismiss LBSF's complaint on international comity grounds. Id. (BNY Memo., pp. 25-28); id., Ex. J (BNY Reply Memorandum of Law in Further Support of Motion for Dismissal ("BNY Reply"), p. 20, Dkt. No. 37, Adv. Proc. 09-01242).

LBSF principally responded that Perpetual's presence was not required under Rule 19 because BNY, as trustee for Perpetual, could adequately represent Perpetual's interests in the adversary proceeding. See Schaffer Dec., Ex. I (LBSF Opposition to BNY's Motion for Dismissal ("LBSF Opp."), pp. 6-8, Dkt. No. 30, Adv. Proc. 09-01242). As support for its assertion, LBSF stressed that BNY already was litigating a similar priority of payment issue in a related adversary proceeding filed by LBSF against American Family Life Assurance Company ("Aflac") and BNY, Adv. Proc. 09-01261 (JMP) (the "*Aflac* Action"). Id. (LBSF Opp., p 8).

In reply, BNY emphasized that, given the competing claims to the Net Proceeds by Perpetual and LBSF, BNY was required to remain neutral. BNY also argued that it had no duty to act in circumstances where Perpetual had not provided satisfactory direction and indemnification. See Schaffer Dec., Ex. J (BNY Reply, pp. 3-5, 12-14). Further, Perpetual had sued BNY in its claim on the Saphir Notes in the English Action, so the antagonism between the two parties was apparent and real.

BNY likewise explained that its role in the *Aflac* Action had no significance for whether it could or would advocate and protect Perpetual's interests in this adversary

proceeding. Id. (BNY Reply, p. 14). It also highlighted three key distinctions between the *Aflac* Action and this one: (1) Aflac, the noteholder, unlike Perpetual, actually is a party in that proceeding; (2) Aflac, unlike Perpetual, provided satisfactory direction and indemnity to BNY; and (3) in the *Aflac* Action, unlike this case, there is no pending foreign proceeding creating the risk that BNY would be subjected to conflicting obligations. Id.

**G.     The Bankruptcy Court Concedes Perpetual's Material Interest In The Bankruptcy Proceeding, But Denies BNY's Motion On The Grounds That BNY Has Been Directed And Indemnified To Litigate A Similar Priority Issue For Another Party In The Separate And Independent *Aflac* Action.**

After full briefing, at the conclusion of the August 11 oral argument, the Bankruptcy Court denied BNY's motion. Picking up on one of LBSF's chief arguments, the court identified, as "the crux of the matter," a single question: "To what extent is BNY a fair representative of Perpetual for purposes of adjudicating this dispute?" See Schaffer Dec., Ex. A (Aug. 11, 2009 Oral Arg. Tr., p. 68:9-11). The court then narrowed its focus even further, stating that the critical inquiry was "whether BNY, feeling some self-described insecurity with respect to its own status, is, at this juncture, a person that can fairly represent the interests of Perpetual in this litigation." Id. (Aug. 11, 2009 Oral Arg. Tr., pp. 69:24-70:5).

Relying almost exclusively on the *Aflac* Action, the court concluded that BNY could, and would, represent Perpetual's interests by "actively prosecut[ing] its position [on priority] in the AFLAC case." Id. (Aug. 11, 2009 Oral Arg. Tr., p. 70:2-5). The court then elaborated on its reasoning:

> While the facts may be subtly different, the legal issues are exactly the same, as I'm understanding the situation presented here. And so, if BNY does nothing other than ardently present the legal argument that it will be advancing in the AFLAC case, it will coincidentally also be ardently

> advocating the very same points in the Perpetual case.  Accordingly, it
> seems to me clear that BNY will at least indirectly be adequately
> representing the interests of Perpetual.  What we end up with, as a result,
> is a fairly subtle issue that seems to be more about the interests of the
> corporate trustee than it is about strict application of pleading principles.

Id. (Aug. 11, 2009 Oral Arg. Tr., p. 70:14-22).  Having relegated Rule 19 to a

mere "pleading principle," and having deemed that the Rule's requirements could

be satisfied by BNY's supposed "representation" of Perpetual's interests, the

Court denied BNY's motion.  Id. (Aug. 11, 2009 Oral Arg. Tr., p. 73:10-11).  The

day after the hearing, on August 12, 2009, the Bankruptcy Court issued an order

denying BNY's motion to dismiss.  See Schaffer Dec., Ex. K (Order Denying

BNY's Motion for Dismissal, dated August 12, 2009, Dkt. No. 43, Adv. Proc. 09-

01242).

## LEAVE TO APPEAL SHOULD BE GRANTED ON THE RULE 19
## AND INTERNATIONAL COMITY ISSUES

**A.     Standards For Granting A Motion For Leave To Appeal An Interlocutory
Bankruptcy Court Order**

"Under [28 U.S.C.] Section 158(a)(3), a district court has discretionary appellate

jurisdiction over an interlocutory order of a Bankruptcy Court."  In re Kassover, 343 F.3d

91, 94 (2d Cir. 2003).  In exercising its discretionary jurisdiction, district courts in this

Circuit ordinarily look to the standards for certifying an interlocutory appeal from district

courts to the courts of appeals set forth in 28 U.S.C. § 1292.  See, e.g., In re Enron Corp.,

2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006); In re Parikh, 2009 WL 2383032, at *1

(E.D.N.Y. July 30, 2009) ("[C]ourts in this Circuit have invariably held [that] all appeals

governed by Section 158(a)(3) ... should refer to the standards articulated by Section

1292(b) to determine whether leave to appeal should be granted.") (citation omitted).

Section 1292(b) authorizes the certification of an interlocutory appeal where the order involves (1) a controlling question of law (2) over which there is substantial ground for difference of opinion (3) where the immediate resolution of the issue may "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The question of certification plainly takes on added importance in a case of this magnitude presenting recognized procedural bars to an adjudication on the merits. "[O]ne of the chief concerns of Section 1292 is the efficiency of the federal court system, and efficiency is of particular concern in large complex cases." Presbyterian Church of Sudan v. Talisman Energy, Inc., 2005 WL 2082847, at *2 (S.D.N.Y. Aug. 30, 2005) (citation omitted). "In so-called 'big' cases, courts may grant certification more freely, while remaining attuned to the inefficiency of having the [district court] hear numerous appeals in the same case." Id. (citation and internal quotations omitted).

**B.      The Bankruptcy Court's Order Denying BNY's Motion Based On Rule 19 Raises Questions That Meet The Criteria For Certifying An Interlocutory Appeal.**

**1.      Whether Rule 19 Requires Dismissal Of LBSF's Action Due To Perpetual's Absence Presents A Controlling Question Of Law.**

There are two elements to a "controlling question of law." First, the question must be one that the reviewing court is able to "decide quickly and cleanly without having to study the record." In re Enron Corp., 2006 WL 2548592, at *4 (citation and internal quotations omitted). Second, the question must also be "controlling" in the sense that "reversal of the Bankruptcy Court's order would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome." Id. (citations omitted).

BNY's Rule 19 argument presents a controlling question of law because it turns on inquiries that this Court can decide without studying the record or resolving factual disputes, and because a ruling in BNY's favor very likely would result in dismissal of LBSF's complaint.  See also Schaffer Dec., Ex. A (Aug. 11, 2009 Oral Arg. Tr., p. 66:16-17 (in addressing Rule 19 issue, noting that "we're not dealing with discovery or witnesses or evidence; we're dealing purely with legal issues") (Peck, J.)).

> ### a. Whether Perpetual is a "required party" under Rule 19(a) is a question of law that can be "quickly and cleanly" determined.

Rule 19 prescribes a two-step inquiry for determining whether an action must be dismissed.  The court first determines whether an absent party is "required" under Rule 19(a) and, if so, whether it is feasible to join that party in the action.  If joinder is not feasible, the court determines whether "in equity and good conscience" the case can proceed without the "required" party or should instead be dismissed under Rule 19(b).

Perpetual indisputably is a "required party" as defined in Rule 19.  Under Rule 19(a)(1)(B), a person is a "required party" if it claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) subject any existing party to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.  Both of these possibilities exist here.

Non-party Perpetual is a "required party" because, as the sole holder of the Saphir Notes, its interest in being paid the Net Proceeds would be impaired if the Bankruptcy Court concludes that Swap Counterparty Priority controls payment and, therefore, that LBSF, not Perpetual, is entitled to priority of payment.  See Spiro v. Parker Brothers, 1992 WL 197405, at *1 (S.D.N.Y. Aug. 4, 1992) (rights of non-party holders of 25%

interests in contract implicated in dispute could be impaired by litigation involving claims by 75% holders); cf. Republic of the Philippines v. Pimentel, -- U.S. --, 128 S. Ct. 2180, 2192 (2008) ("'Conflicting claims by beneficiaries to a common trust present a textbook example of a case where one party may be severely prejudiced by a decision in his absence.'") (quoting Wichita & Affiliated Tribes of Okla. v. Hodel, 788 F.2d 765, 774 (D.C. Cir. 1986)).

Alternatively, non-party Perpetual is a "required party" because, if the Bankruptcy Court concludes that LBSF is entitled to priority in Perpetual's absence, BNY would be subject to multiple, inconsistent obligations. The inconsistency comes from the judgment in the English Action establishing that Noteholder Priority controls payment, on the one hand, and a potential judgment in the adversary proceeding (not binding on non-party Perpetual) that Swap Counterparty Priority controls payment, on the other hand. See Rapoport v. Banco Mexicano Somex, S.A., 668 F.2d 667, 669 (2d Cir. 1982) (affirming Rule 19 dismissal where defendant bank faced risk of conflicting obligations); Weber v. King, 110 F. Supp. 2d 124, 128 (E.D.N.Y. 2000) (similar). Even LBSF has acknowledged that "[i]t would be wholly wrong needlessly to place BNY in a position where it might be subject to conflicting positions and orders." See Schaffer Dec., Ex. G (Lyons Dec., Ex. C, LBSF's Skeleton Argument in English Action, p. 6, ¶ 23).

**b.** **Whether the action should proceed without Perpetual or be dismissed under Rule 19(b) is a question of law that can be "quickly and cleanly" determined.**

Because Perpetual is a "required party," the factors in Rule 19(b) must be consulted to determine whether dismissal of the action is required since Perpetual's joinder is not feasible.[7]  Consideration of those factors here compels dismissal.

**(i)** **Rule 19(b)(1)—A judgment rendered in Perpetual's absence would prejudice Perpetual and BNY.**

Perpetual certainly would be prejudiced if the Bankruptcy Court determines that BNY must distribute the Net Proceeds to LBSF.  BNY just as surely would be prejudiced if the Bankruptcy Court and the English Court render conflicting or inconsistent judgments subjecting BNY to multiple obligations.  <u>Rapoport</u>, 668 F.2d at 669.

**(ii)** **Rule 19(b)(2)—The prejudice that would result from a judgment in Perpetual's absence cannot be lessened.**

Short of committing to adopt any decision of the English Courts, the Bankruptcy Court cannot fashion relief that would preclude prejudice to Perpetual and BNY. Moreover, the rights of Perpetual, as a foreign non-party, cannot be adequately protected by this Court.  <u>Id.</u>

**(iii)** **Rule 19(b)(3)—A judgment rendered in Perpetual's absence would not be adequate.**

A judgment rendered in Perpetual's absence would be inadequate because Perpetual would not be bound by an adverse decision and would be free to enforce the

---

[7]  The analysis here begins with the point that joinder of Perpetual apparently would not be feasible because the Bankruptcy Court apparently lacks personal jurisdiction over Perpetual.  <u>See</u> Schaffer Dec., Ex. A (Aug. 11, 2009 Oral Arg. Tr., p. 67:13-21 (Bankruptcy Court noting that it will assume Perpetual could not be joined given its absence and that "no effort has been made by either LBSF or BNY to join" it)); <u>id.</u>, Ex.F (Venditto Dec., Ex. 1, June 3, 2009 Hearing Transcript Excerpt, p. 102 (statement by LBSF's counsel that Perpetual was not named as a party to this adversary proceeding solely because of LBSF's uncertainty regarding personal jurisdiction over Perpetual)).

judgment in its favor in the English Action.  Global Disc. Travel Servs., LLC v. Trans World Airlines, Inc., 960 F. Supp. 701, 708-09 (S.D.N.Y. 1997).  Thus, continued litigation here in Perpetual's absence would not advance a complete or efficient disposition of this controversy, one of the principal purposes of Rule 19.  See Pimentel, -- U.S. --, 128 S. Ct. at 2193 ("adequacy" under Rule 19(b)(3) "refers to the 'public stake in settling disputes by wholes, whenever possible'") (citation omitted).

> **(iv)** **Rule 19(b)(4)—LBSF already has an adequate remedy in lieu of any it might secure in the adversary proceeding:  a full and fair opportunity to contest Perpetual's claim to Noteholder Priority in the English Action.**

The "most important" of the Rule 19(b) factors is "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."  Spiro, 1992 WL 197405, at *2 (citations omitted) (dismissal warranted, in part, because state and federal courts provided adequate alternative forums for adjudication of claims).  Here, LBSF has an adequate remedy in the English Action, where all necessary parties are present and presumptively sufficient process is provided.  See Soc'y of Lloyd's v. Edelman, 2005 WL 639412, at *3 (S.D.N.Y. March 21, 2005) (English system "incontrovertibl[y] . . . provides impartial tribunals and procedures compatible with the requirements of due process of law") (citing, *inter alia*, Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993)).

In adopting Chapter 15 of the Bankruptcy Code, Congress recognized that disputes such as those presented here may be determined in foreign courts.  LBSF, already having made itself a party to the English Action, has the ability to act with full authority on behalf of the estate in a foreign country.  See 11 U.S.C. § 1505.  And, indeed, LBSF filed (and the Bankruptcy Court granted) a motion under § 1505 seeking

precisely this authority. <u>See</u> Schaffer Dec., Ex. M (LBSF Motion Pursuant to 11 U.S.C. § 1505 to Act as the Foreign Representative of its Estate in the United Kingdom, Dkt. No. 4308, Case No. 08-13555 (JMP) (U.S. Bankr. Ct., Southern District of New York) (July 9, 2009)); <u>id.</u>, Ex. N (Order Granting LBSF's § 1505 Motion, Dkt. No. 4712, Case NO. 08-13555 (JMP) (August 5, 2009)).

Accordingly, adjudication of the issues in the English Action in no way impedes or deprives the estate of its rights to litigate the issues or pursue its available claims and defenses. In <u>Banque Indosuez SA v. Ferromet Resources Inc</u> [1993] BCLC 112, an English court discharged injunctions obtained by a secured creditor against a Chapter 11 debtor on the basis that the injunctions violated the automatic stay imposed by Section 362 of the Bankruptcy Code, and held that determination of the creditor's interest in the debtor's property had to proceed in the debtor's U.S. bankruptcy case. <u>See also</u> <u>MCC Proceeds Inc v. Bishopgate Investment Trust plc & Ors.</u> [1999] C.L.C. 417 (English court applied Article 8 of the New York Uniform Commercial Code to determine whether pledged securities were transferred to bona fide purchasers).[8]

      **c.**      **Whether Rule 19 requires a dismissal is "controlling" because it is dispositive of LBSF's action.**

A question of law is "controlling" for purposes of § 1292(b) if "reversal of the Bankruptcy Court's order would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome." <u>In re Enron Corp.</u>, 2006 WL 2548592, at *4 (citation omitted); <u>see also Primavera Familienstiftung v. Askin</u>, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (in analyzing whether question is

---

[8] Copies of these English decisions are attached to the Schaffer Dec., Ex. F (Venditto Dec., Exs. 8 and 9).

"controlling," court should look to whether "reversal . . . could result in dismissal of the action" or, if not dismissal, still "could significantly affect the conduct of the action").

If this Court agrees with BNY and concludes that equity supports dismissal under Rule 19(b), it likely will reverse the Bankruptcy Court's order and direct that court to dismiss LBSF's action. Accordingly, the Rule 19 question raised by BNY plainly is "controlling" within the meaning of § 1292(b). See Discretionary Appeals of District Court Interlocutory Orders: A Guided Tour Through Section 1292(b) of the Judicial Code, 69 YALE L. J. 333, 350 (1959) (noting that where Rule 19 requires dismissal, it presents a "controlling" question because it "go[es] to the right to maintain the action").

   **2.    There Is Substantial Ground For A Difference Of Opinion Over The Correctness Of The Bankruptcy Court's Order Denying BNY's Rule 19 Motion.**

This Court has explained that a "'substantial ground for a difference of opinion' must arise out of a genuine doubt as to whether the Bankruptcy Court applied the correct legal standard." In re Enron Corp., 2006 WL 2548592, at *4 (citation omitted). As the discussion above demonstrates, analysis of BNY's Rule 19 argument reveals plain reversible error in the Bankruptcy Court's refusal to dismiss due to Perpetual's absence, thus demonstrating "substantial doubt" that the court's order was correct.

"Substantial ground" for differing views on the Bankruptcy Court's decision also follows from the clear conflict between that order and the Second Circuit's controlling decision applying Rule 19 in Rapoport, 668 F.2d 667. There, the Second Circuit held that Mexican citizens who asserted competing claims to deposits held by Rapoport at a Mexican bank were necessary parties who had to be joined, if feasible, in Rapoport's action seeking payment of the deposits. Although the district court did not have personal jurisdiction over the Mexican claimants, all of the claimants were parties to Mexican

actions addressing the same issue.  Id. at 669.  In affirming dismissal, the court found that the competing claimants were necessary parties in the New York action because the action affected their interests in and claims to the deposits.  The court further found that, absent joinder, the defendant bank would face a substantial risk of incurring multiple or otherwise inconsistent obligations as a result of conflicting judgments that might issue in the New York and Mexican actions.  Id.  The Court also found that the Mexican courts provided an adequate forum for litigation of the rights of all claimants.  Id.

Rapoport likewise compels dismissal here because the "required" but absent party, Perpetual, has not been joined by LBSF due to apparent personal jurisdiction impediments.  Yet, the Bankruptcy Court departed from Rapoport without explanation and reached a contrary result.  This conflict with controlling Second Circuit precedent reinforces that there is "substantial ground for difference of opinion" regarding the correctness of the Bankruptcy Court's order.

There is yet a third "substantial ground" for difference of opinion regarding the Bankruptcy Court's order, specifically with respect to its conclusion that BNY would advocate Perpetual's interests in the adversary proceeding.  That conclusion conflicts with English law.  In particular, as a matter of controlling English law, BNY's obligations to Perpetual are conditioned upon proper indemnification.  See Schaffer Dec., Ex. G (Lyons Dec., ¶¶ 14, 31 (citing Judgment ¶¶ 12, 21)); id., Ex. D (Complaint, Exs. B (Supplemental Trust Deed Clause 1) and D (ISDA Master Agreement, § 13(a)); id., Ex. F (Venditto Dec., Exs. 2 and 3 (Schedules to ISDA Master, Part 4-(i)).

But in the English Action, the court recognized that the governing documents entitle BNY to direction from the noteholder (*i.e.*, Perpetual) and indemnification to BNY's satisfaction before it has any duty to act:

> Clause 5.6 provides for the Trustee to take possession of the mortgaged property. The Trustee is bound "at any time after any security … shall have become enforceable" if requested by at least one fifth of the noteholders, directed by extraordinary resolution of the noteholders or directed by the Swap Counterparty in certain specified events or otherwise at its discretion to enforce the security over the collateral. *But, in every case, its obligation is "subject to it having been indemnified to its satisfaction against any loss [etc.] which may be incurred or made against it in connection therewith.*"

See Schaffer Dec., Ex. G (Lyons Dec., Ex. B, Judgment ¶ 10 (emphasis added)).

BNY has no duty to act on Perpetual's behalf because Perpetual has not yet provided BNY with either satisfactory direction with regard to the defense of this adversary proceeding or a satisfactory indemnity. Id., Ex. A (Aug. 11, 2009 Oral Arg. Tr., p. 18:1-10 ("'I did not understand it to be an issue because it is quite clear from the wording of the relevant clause that you [i.e., BNY] cannot be made to do anything without an indemnity. You have not been offered any indemnity. Therefore, there can't be any question at the moment of telling you to do anything'") (E. Schaffer, quoting English Chancellor)); id., Ex. G (Lyons Dec., ¶¶ 28 and 31).

The absence of any duty on BNY's part is further supported by Clause 9 of the Principal Trust Deed, dealing with the general rights and duties of the trustee. Under Clause 9.6, BNY has no duty to undertake any action that might subject it to "any loss, liability, cost, claim, action, demand, expense or inconvenience" that may result from the exercise or non-exercise of its functions. See Schaffer Dec., Ex. G (Lyons Dec., ¶¶ 23). Given the competing and incompatible demands that BNY make distributions to LBSF and Perpetual, and the lack of any indemnity in the event that LBSF prevails, BNY is not

obligated to advocate for either side in this case.  Id., Ex. G (Lyons Dec., ¶ 31).  When

two parties with an interest in trust property disagree over their respective rights, the

trustee must remain neutral in their dispute and not side with one against the other:

> In a case where the dispute is between rival claimants to a beneficial
> interest in the subject matter of the trust, … *the duty of the trustee is to*
> *remain neutral* and (in the absence of any court direction to the
> contrary…) offer to submit to the court's directions, leaving it to the rivals
> to fight their battles.

Alsop Wilkinson v. Neary [1995] 1 All ER 431 (emphasis added), quoted in Schaffer

Dec., Ex. G (Lyons Dec., ¶ 15).[9]

The Bankruptcy Court attempted to bolster its erroneous conclusion that BNY

could adequately represent Perpetual's interests by noting BNY's advocacy in the *Aflac*

Action of the same Noteholder Priority position that Perpetual has advanced in the

English Action.  This reasoning raises another, and fourth, substantial ground for dispute.

While LBSF points to BNY's posture in the *Aflac* Action as evidence that BNY is

capable of defending a noteholder's position, it ignores the fact that *Aflac* is a separate

and independent action involving an unrelated noteholder.  Whether BNY is capable of

acting in a different case has no bearing on whether BNY has any duty to represent

Perpetual in this case.  In any case, the *Aflac* Action is materially distinguishable from

this case in three critical respects:  (1) the noteholder, Aflac, is a party, so the Rule 19

---

[9]  In the face of this controlling English law regarding the nature and scope of BNY's relationship with
Perpetual, the Bankruptcy Court nonetheless repeatedly stated that BNY had a trust or fiduciary
relationship with Perpetual that, in the Court's view, established that BNY would advocate Perpetual's
interests in this proceeding.  The Bankruptcy Court referred to FDIC v. Bank of N.Y., 479 F. Supp. 2d 1
(D.D.C. 2007), aff'd, Bank of N.Y. v. FDIC, 508 F.3d 1 (D.C. Cir. 2007), as support for this view.  See
Schaffer Dec., Ex. A (Aug. 11, 2009 Oral Arg. Tr., p. 68:11-19).  But the court in that case stressed that "a
trustee does *not* adequately represent its beneficiaries when there is evidence demonstrating that the trustee
has assumed an 'antagonistic' attitude toward the beneficiaries and their legal position.'"  Id. at 10
(citations omitted) (emphasis added).  More importantly, Bank of N.Y. did not involve the law that controls
BNY's relation with Perpetual—English law.

issues that beset this case are absent in the *Aflac* Action; (2) Aflac, unlike Perpetual here, has provided direction and indemnity to BNY; and (3) there is no parallel foreign proceeding relating to *Aflac*, let alone a foreign judgment binding on LBSF.

> **3.  Immediate Review Of The Order Denying BNY's Rule 19 Motion May Materially Advance The Ultimate Termination Of This Litigation Because A Reversal Of The Bankruptcy Court's Order Very Likely Will Result In A Dismissal Of LBSF's Action.**

An immediate appeal may "advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the time required for trial.'" In re Enron Corp., 2006 WL 2548592, at *3 (citation omitted). "Courts place particular emphasis on the importance of this last factor." Id. (citing, *inter alia*, Lerner v. Millenco, L.P., 23 F. Supp. 2d 345, 347 (S.D.N.Y. 1998) (noting Second Circuit "has emphasized the importance of the third consideration in determining the propriety of" certification)).

For the same reasons BNY's Rule 19 argument raises a controlling question, it may advance the termination of the litigation if reviewed now.  If leave to appeal is granted and this Court reverses the Bankruptcy Court's order and orders dismissal based on Rule 19, plainly it will have materially advanced the termination of the litigation.  See In re Enron Corp., 2006 WL 2548592, at *8 (finding that this prong was "easily met, because granting leave to appeal . . . may result in the disposition of the Adversary Proceedings in their entirety"); Benger Labs. Ltd. v. R.K. Laros Co., Inc., 24 F.R.D. 450, 455 (E.D. Pa. 1959) (noting that immediate appeal would materially advance termination if the court's "view of the law [concerning Rule 19] is in error and Armour and Company is an indispensable party to this action, [in which case] any trial would be useless").  Thus, BNY's Rule 19 argument meets the final criterion for certification under § 1292(b).

4. **Immediate Review Is Called For Given Rule 19's Fundamental Role In Promoting Fair And Just Adjudications.**

The importance of enforcing Rule 19 follows from its due process origins and the fundamental role it plays in the civil justice system. As the Supreme Court recently explained, Rule 19 and its direction on "who may, or must, be parties to a suit has consequences for the persons and entities affected by the judgment; for the judicial system and its interest in the integrity of its processes and the respect accorded to its decrees; and for society and its concern for the fair and prompt resolution of disputes." Pimentel, 128 S. Ct. at 2188.

Rule 19 thus "is designed to protect the interests of absent persons as well as those already before the court from multiple litigation or inconsistent judicial determinations." Charles Alan Wright, et al., 7 Fed. Prac. & Proc. Civ. 3d § 1602 (2009). Indeed, "[t]he failure of the court to protect those not before it may amount to a violation of due process should the judgment in the action have the effect of destroying their rights." Id.; see also Pujol v. Shearson/American Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989) (reasoning that Rule 19 must be applied in light of both "efficiency and due process"); Fletcher Aircraft Co. v. Bond, 77 F.R.D. 47, 52 (C.D. Cal. 1977) (Rule 19 embodies the principle that "a judgment which substantially affects the rights of a party who is not joined violates due process") (citing Hanson v. Denckla, 357 U.S. 235, 254-55 (1958)).

Given Rule 19's pivotal place in protecting absent litigants, it should come as no surprise that certification of Rule 19 issues for immediate interlocutory appeal can trace its roots to the very creation of 28 U.S.C. § 1292(b). The 1958 Senate Report recommending the passage of § 1292(b) expressly cited as an example of a certifiable

order a decision refusing to join a party to the litigation—immediate review and reversal of such a decision, the Report noted, "would have resulted in a saving of the time of the district court and considerable expenses on the part of the litigants[,]" the very animating purpose of § 1292. *See* Sen. Rep. No. 2434, 85th Cong., 2d Sess. (1958 U.S.C.C.A.N., p. 5255). See also U.S. v. Woodbury, 263 F.2d 784, 787 (9th Cir. 1959) (citing Sen. Rep. No. 2434); Discretionary Appeals of District Court Interlocutory Orders, 69 YALE L. J. at 350 (noting that included among the orders Congress "clearly intended to [make] appealable under 1292(b)" were those refusing "to join an indispensable order over whom personal jurisdiction cannot be obtained").

For these reasons, district courts frequently have certified orders denying motions to dismiss under Rule 19, and courts of appeals frequently have agreed to review them. See, e.g., Dore Energy Corp. v. Prospective Inv. & Trading Co. Ltd., 570 F.3d 219, 224 (5th Cir. 2009); Burka v. Aetna Life Ins. Co., 87 F.3d 478, 480 (D.C. Cir. 1996); Tick v. Cohen, 787 F.2d 1490, 1492 (11th Cir. 1986); Hoheb v. Muriel, 753 F.2d 24, 25 (3d Cir. 1985); Herron v. Keene Corp., 751 F.2d 873, 874 (6th Cir. 1985); Virginia Elec. & Power Co. v. Westinghouse Elec. Corp., 485 F.2d 78, 81 (4th Cir. 1973); English v. Seaboard Coast Line R.R. Co., 465 F.2d 43, 44-45 (5th Cir. 1972); St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc., 664 F. Supp. 824, 832 (S.D.N.Y. 1987); Parkson Corp. v. Fruit of the Loom, Inc., 1992 WL 541570, at *6 (E.D. Ark. Dec. 10, 1992); Benger Labs. Ltd., 24 F.R.D. at 455. The same result should follow here.

**C.      The Bankruptcy Court's Order Denying BNY's Motion To Dismiss Based On International Comity And Deference To The First-Filed English Action Raises Questions That Meet The Criteria For Certifying An Interlocutory Appeal.**

In addition to the Rule 19 issues discussed above, BNY raised the dispositive argument that international comity required deference to the first-filed English Action and dismissal of this action. The Bankruptcy Court's ruling rejecting international comity principles also meets the criteria for certification and likewise should be certified for immediate review. See, e.g., Ford v. Brown, 319 F.3d 1302, 1304 (11th Cir. 2003) (accepting certified order denying motion to dismiss based in part on comity).

**1.      Whether International Comity Requires The Dismissal Of LBSF's Action Due To The First-Filed English Action—Which Already Has Resulted In A Judgment In Perpetual's Favor—Presents A Controlling Question Of Law.**

The comity argument can be resolved "quickly and cleanly" by application of settled legal principles to undisputed aspects of the U.S. and English proceedings and the governing documents. See In re Enron Corp., 2006 WL 2548592, at *4. This Court has made clear that "absent exceptional circumstances, a federal court in the exercise of its discretion should decline to assert jurisdiction and defer to the corresponding interests and laws of foreign tribunal adjudicating related disputes in proceedings involving the same parties over which they have proper jurisdiction." Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 444 (S.D.N.Y. 2002). This directive applies with particular force in this case for numerous reasons.

First and indisputably, the English Action involves the same parties in this proceeding (LBSF and BNY) and the same governing documents. Moreover, the English Action was filed before this adversary proceeding; the relevant documents are governed by English law; the English courts can accord complete relief applying their own laws;

and the English High Court of Justice, Chancery Division, already has conducted a trial and rendered a judgment in the English Action.[10]

Second, the foreign proceedings here are in England—which "incontrovertibl[y] [] provides impartial tribunals and 'procedures compatible with the requirements of due process of law" (Soc'y of Lloyd's, 2005 WL 639412, at *3 (citation omitted))—further supports BNY's comity argument and substantially narrows any discretion the Bankruptcy Court might otherwise have had in adjudicating the comity issue. See also Roby, 996 F.2d at 1363 (noting that "United States courts consistently have found [English courts] to be neutral and just forums"); Clarkson Co. v. Shaheen, 544 F.2d 624, 629-30 (2d Cir. 1976) (where foreign proceeding is in a sister common law jurisdiction (such as England) with procedures like those in the U.S., exceptions to comity are "construed especially narrowly").

Third, and at the same time, there are no "exceptional circumstances" that would justify the Bankruptcy Court's refusal to follow the dictates of comity and defer to the English Action. As noted, LBSF has been participating fully in the English Action and recently, by leave of the Chancellor, lodged an expedited appeal from the Chancery Division's decision in Perpetual's favor. There is no indication that the English Court

---

[10] The existence of the English judgment is particularly noteworthy because it should be given preclusive effect in this proceeding under *res judicata* and collateral estoppel despite LBSF's pending appeal from the judgment. See, e.g., China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987) (noting that if a final judgment is reached first in the foreign court, it can then be pled as *res judicata* in the domestic court); Alfadda v. Fenn, 966 F. Supp. 1317, 1325 (S.D.N.Y. 1997) (collateral estoppel "applies to issues decided by the courts of foreign countries"); Scheiner v. Wallace, 832 F. Supp. 687, 695 (S.D.N.Y. 1993) (granting summary judgment to defendant based on collateral estoppel effect of English judgment); Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo., 2007 WL 633951, at *4 n.5 (S.D.N.Y. Feb. 26, 2007) (noting majority rule and rule in Second Circuit that pendency of appeal does not prevent use of judgment as basis for preclusion) (citing Straus v. Am. Publishers' Ass'n, 201 F. 306, 310 (2d Cir. 1912)). As noted, the English Court reached the view that Noteholder Priority was triggered by LBHI's bankruptcy filing in mid-September 2008 (prior to LBSF's own bankruptcy filing). At a minimum, this ruling magnifies the force and applicability of the international comity doctrine in this case.

has not considered LBSF's arguments or failed to resolve the controlling questions under the dictates of English law. In these circumstances, there would be little left of international comity principles if the English proceedings are not respected and a dismissal ordered. To hold otherwise provides LBSF with an opportunity to open an unwarranted collateral attack on a fully-sufficient foreign adjudication because it does not like the result.

> **2.      There Is Substantial Ground For A Difference Of Opinion Over The Correctness Of The Bankruptcy Court's Order Denying BNY's Request For Dismissal Based On International Comity And First-Filed Principles.**

In light of the discussion above, analysis of BNY's comity argument reveals substantial doubt over the correctness of the Bankruptcy Court's decision. In re Enron Corp., 2006 WL 2548592, at *5 (citation omitted). If refusal to dismiss based on the doctrine of comity is not compelled here—given the respective nature of the U.S. and English proceedings implicated here, and the absence of any countervailing "exceptional circumstances" calling for a refusal to defer to the English proceeding—it is hard to see what circumstances would dictate it.

> **3.      Immediate Review Of The Bankruptcy Court's Order Denying BNY's International Comity Motion May Materially Advance The Ultimate Termination Of This Litigation Because A Reversal Of The Bankruptcy Court's Order Very Likely Will Result In A Dismissal Of LBSF's Action.**

Just as immediate review of BNY's Rule 19 argument may lead to reversal and dismissal, immediate review of its comity argument may lead to precisely the same result, thus satisfying the "advance the ultimate termination of the litigation" criterion under § 1292(b). See In re Enron Corp., 2006 WL 2548592, at *8 ("ultimate

termination" prong "easily met, because granting leave to appeal . . . may result in the disposition of the Adversary Proceedings in their entirety").

> **4. Immediate Review Is Called For To Foster Proper Respect For Foreign Adjudications And To Avoid A Multiplicity Of Conflicting Lawsuits.**

Immediate review of the Bankruptcy Court's refusal to exercise comity and defer to the first-filed English Action is necessary to give effect to the important policies that comity serves. As this Court has explained, "[t]he concept of international comity is based on the principle that giving due recognition to acts and proceedings of foreign tribunals promotes international cooperation, strengthens mutual ties, fosters reciprocal treatment and thereby enhances the rule of law on the international scale, both within and among nations." Dow Jones & Co., 237 F. Supp. 2d at 444.

The importance of comity "in our globalized economy cannot be overstated . . . . Indeed, the 'world economic interdependence has highlighted the importance of comity, as international commerce depends to a large extent on 'the ability of merchants to predict the likely consequences of their conduct in overseas markets.'" Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 491 F.3d 355, 360 (8th Cir. 2007) (citation omitted); see also Rapture Shipping, Ltd. v. Allround Fuel Trading B.V., 350 F. Supp. 2d 369, 373 (S.D.N.Y. 2004) ("The importance of extending comity whenever these prerequisites have been met has only increased as our economy has become increasingly global and dependent upon international commerce. Affording foreign courts a measure of deference brings a degree of predictability to international commerce that is critical to a smooth functioning of business.") (citing Roby, 996 F.2d at 1362-63).

Here, the Bankruptcy Court has abandoned the requisite deference in favor of a parochial interest in adjudicating the same dispute the English courts have undertaken to

resolve. The court's willingness to pursue its own resolution leaves no predictability in the commercial transactions in this case, even in circumstances where the parties agreed to resolution of their dispute in English courts and under English law. This is, in short, the precise circumstance where principles of comity can and should be brought to bear. This Court's grant of certification therefore is needed to restore those principles and prevent their subversion.

## CONCLUSION

The Bankruptcy Court's order denying BNY's request for dismissal on Rule 19 and international comity grounds meets all the criteria for immediate appeal. This Court's intervention is the only means by which to give Rule 19 and comity their intended effect, avoid the substantial prejudice to Perpetual and BNY, and provide the proper measure of respect due the English Action. Accordingly, this Court should grant this motion and accept BNY's appeal from the Bankruptcy Court's interlocutory order denying BNY's motion for dismissal.

Dated: August 24, 2009
      New York, New York

                                                **REED SMITH LLP**

                                                /s/ Eric A. Schaffer
                                                Eric A. Schaffer
                                                Michael J. Venditto
                                                David M. Schlecker
                                                599 Lexington Avenue
                                                New York, New York 10022
                                                Tel.: 212.521.5400
                                                Fax: 212.521.5450

                                                *Attorneys for BNY Corporate Trustee*
                                                *Services, Ltd.*