**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., et al. | Case No. 08-13555 (JMP) |
| Debtors. | |
| LEHMAN BROTHERS SPECIAL FINANCING INC., | Adv. Proc. No. 09-01242 (JMP) |
| Plaintiff, | |
| - against - | Refers to Dkt. No. 60 |
| BNY CORPORATE TRUSTEE SERVICES LIMITED, | |
| Defendant. | |

**SECOND SUPPLEMENTAL AFFIRMATION OF MICHAEL J. VENDITTO**
**IN FURTHER SUPPORT OF THE MOTION FOR**
**SUMMARY JUDGMENT OF BNY CORPORATE TRUSTEE SERVICES LIMITED**

Michael J. Venditto, affirms the following to be true and correct under penalty of perjury:

1. I am a member of the firm of Reed Smith, LLP, counsel to BNY Corporate Trustee Services Limited ("BNY") in the above-captioned adversary proceeding. I submit this affirmation in further support of the Motion for Summary Judgment of BNY Corporate Trustee Services Limited. [Adv. Pro. Dkt. No. 60] to advise this Court of recent developments in the *Perpetual* litigation that have taken place since the November 9, 2009 submission of BNY's Reply Memorandum of Law [Adv. Pro. Dkt. No. 78].[1]

---

[1] Capitalized terms that are not defined herein have the meaning ascribed to those terms in BNY's Reply Memorandum of Law [Adv. Pro. Dkt. No. 78].

2. Over the last week, there have been a number of submissions by the parties in the English courts, as well as hearings before and rulings by the English courts, that are relevant to the arguments raised by the parties in support of and in opposition to the Motion.

3. The parties in this adversary proceeding have asked this Court to coordinate with the High Court. To ensure that this Court is fully and adequately informed about the current status of the proceedings in the *Perpetual* litigation, copies of several significant documents are annexed.

**November 13, 2009 Order from the Court of Appeal**

4. On November 13, 2009, the Court of Appeal entered an order denying LBSF's motion for leave to appeal the Court of Appeal Judgment to the Supreme Court of England and Wales. A copy of that ruling is annexed as Exhibit "A."

**Submissions to the High Court**

5. On November 6, 2009, Perpetual requested that the High Court conduct a hearing to consider further correspondence and coordination with this Court (the "Perpetual Application").

6. On or about November 11, 2009, in response to Perpetual's request, LBSF submitted to the High Court the First Witness Statement of Matthew Shankland, dated November 11, 2009, (the "Shankland Statement"). A copy of the Shankland Statement is attached hereto as Exhibit "B."

7. The Shankland Statement disclosed the contents of LBSF's Recognition Application pursuant to The Cross-Border Insolvency Regulations 2006 (the "Recognition

Application") that LBSF had filed with the High Court on October 13, 2009. A copy of the Recognition Application is attached hereto as Exhibit "C."[2]

8. The Shankland Statement states, in part, that the Recognition Application "contains an express proviso that the stay and suspension referred to in Article 20(1) of the Model Law shall not apply to the . . . [*Perpetual* litigation] . . . or any appeals in [the *Perpetual* litigation]." Shankland Statement ¶ 6.

9. The Shankland Statement further states:

> Whilst a determination and declarations of the effect of US Bankruptcy law on the rights of the parties are sought, no orders are sought at this stage which require BNY to act in any particular way (for example, as Perpetual apparently fear, by making distributions to LBSF or any other party). Further orders from the US Bankruptcy Court would be required for this to occur.

Id. ¶ 10.

* * *

> [T]he English Court and the US Bankruptcy Court have already indicated their understanding of the scope of their respective jurisdictions and of the need to communicate and to reach a co-ordinated result <u>after</u> and in light of the rulings of each court on matters of principle.

Id. ¶ 11 (emphasis in original).

10. In support of the Recognition Application, LBSF submitted to the High Court the Affidavit of Daniel J. Ehrmann, dated September 30, 2009 (the "Ehrmann Affidavit").[3] A true and correct copy of the Ehrmann Affidavit is attached hereto as Exhibit "D."

---

[2] Although LBSF had submitted the Recognition Application to the High Court in October, it was only made available to BNY on November 13, 2009 and therefore was not submitted with the Reply Memorandum.

[3] The Ehrmann Affidavit states that the Recognition Application is made in accordance with this Court's Order Authorizing LBSF to Act as the Foreign Representative of its Estate in the United Kingdom, dated August 5, 2009. [Main Dkt. No. 4712]. See Ehrmann Affidavit ¶ 25.

11.     The Ehrmann Affidavit states in part:

> [F]or the avoidance of any doubt, I should make it clear that by the present application it is not intended that there should be any stay of the current English proceedings referred to above [i.e., the *Perpetual* litigation]. However, depending upon the outcome of the summary judgment application pending before the US Bankruptcy Court (and the outcome of the appeal pending before the English Court of Appeal), LBSF as its own foreign representative (under Article 21 of the Model Law or otherwise) or the US Court itself may wish to seek the assistance of the English Court. The present application for recognition of LBSF's Chapter 11 may assist any such request (for example, recognition of the foreign proceeding is a pre-requisite for an application for relief under Article 21).

Ehrmann Affidavit ¶ 27.

12.     On or about November 13, 2009, LBSF submitted to the High Court its Skeleton Argument on Behalf of Lehman Brothers Special Financing Inc., dated November 13, 2009, in connection with LBSF's response to the Perpetual Application (the "LBSF Skeleton"). A copy of the LBSF Skeleton is attached hereto as Exhibit "E."

13.     The LBSF Skeleton states, in part:

> The Proceedings before the US Bankruptcy Court are also not an attempt to 'strong-arm' BNY. If made, the order will declare the effect of US Bankruptcy law on the rights of the parties but will not require BNY to act (or refrain from acting) in any particular way. No order is sought at this stage requiring BNY, for example, to distribute the collateral to LBSF. Further orders from the US Bankruptcy Court would be required to [sic] for this to occur and none are presently sought by LBSF."

LBSF Skeleton ¶ 9 (emphasis from original).

14.     The LBSF Skeleton further states:

> [I]n the same way as the Chancellor postponed the making of any order giving effect to his ruling on the enforceability of Noteholder Priority so as to permit Judge Peck to rule upon the effect of the US Bankruptcy Code in the US, so Judge Peck has indicated that if he were to find in favour of LBSF on the point of principle under US law, he would likewise seek to communicate with the Chancellor to reach a co-ordinated result.

Id. ¶ 12

* * *

> There is therefore no risk that BNY will find itself in a position of being accused of doing anything contrary to US law, or of being ordered to do anything by Judge Peck, before further inter-court communications have taken place.

Id. ¶ 13.

15. On November 16, 2009, Mr. Justice Henderson of the High Court heard argument on the Perpetual Application. A copy of the transcript of that hearing is annexed as Exhibit "F."

**November 17, 2009 High Court Ruling**

16. On November 17, 2009, Mr. Justice Henderson delivered an oral ruling on the Perpetual Application. In that ruling, he stated that he intended to send a letter to this Court prior to the scheduled oral argument of the Motion on November 19, 2009. Among several points that Mr. Justice Henderson determined should be included in that correspondence, are the following:

- LBSF has said, both in its evidence and in its submissions to the High Court, that at the November 19, 2009 hearing it will be seeking declaratory relief only as to the position of the parties under U.S. bankruptcy law and it will not be seeking any order which requires BNY to act in any particular way;

- The English court has confined itself to making a declaration that the relevant contractual provisions are "valid, effective and enforceable under English law as the proper law of such contracts, so as to give effect to Noteholder Priority";

- The English court has deliberately refrained from making any further orders or declarations which might be seen as precluding any request or other application to be made by the foreign representative of LBSF; and,

- The High Court will respectfully invite the Bankruptcy Court, if it concludes that the relevant provisions are void or otherwise unenforceable under United States law

    (i) to go no further at this stage than to make a declaratory judgment to that effect;

(ii) not to make any order which would either (a) require BNY to act or deal in any particular way with the collateral or its proceeds; or (b) declare that BNY is required to act or deal in any particular way with the collateral or its proceeds until further communication has taken place between the courts, as envisaged in the penultimate paragraph of Judge Peck's August 20, 2009 letter to the Chancellor.

Affirmed: November 17, 2009
New York, New York

/s/ *Michael J. Venditto*
MICHAEL J. VENDITTO