UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
LEHMAN BROTHERS HOLDINGS INC., *et al.*  :  Chapter 11
              Debtors.  :  Case No. 08-13555 (JMP)
------------------------------------- x
------------------------------------- x
LEHMAN BROTHERS SPECIAL FINANCING INC.,  :
              Plaintiff,  :  Adversary Proceeding
    v.  :  No. 09-01242 (JMP)
BNY CORPORATE TRUSTEE SERVICES LIMITED,  :
              Defendant.  :
------------------------------------- x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF MOTION OF BNY CORPORATE TRUSTEE SERVICES LIMITED
FOR LEAVE TO APPEAL THE JULY 19, 2010 ORDER
GRANTING LEHMAN BROTHERS SPECIAL FINANCING INC.'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING BNY CORPORATE TRUSTEE SERVICES LIMITED'S
MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Telephone: 212.521.5400
Facsimile: 212.521.5450

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for*
*BNY Corporate Trustee Services Limited*

# TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION | 1 |
| I. THE BANKRUPTCY COURT'S ORDER IS FINAL AND APPEALABLE AS OF RIGHT. | 3 |
| II. THE BANKRUPTCY COURT'S ORDER SATISFIES THE STANDARD FOR OBTAINING LEAVE TO APPEAL. | 8 |
| III. LBSF'S RESPONSE ONLY CONFIRMS THAT PROMPT APPELLATE REVIEW IS NECESSARY AND APPROPRIATE. | 11 |
| CONCLUSION | 14 |

# TABLE OF AUTHORITIES
**Page(s)**

## Cases

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*,
   258 B.R. 580 (Bankr. S.D.N.Y. 2001) ......................................................................... 6

*In re Trace Int'l Holdings, Inc.*,
   No. 04 Civ. 1295 (KMW), 2009 WL 3398515 (S.D.N.Y. Oct. 21, 2009) ................... 9

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir. 1990) ........................................................................................... 9

*Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs. Ltd.*,
   422 B.R. 407 (Bankr. S.D.N.Y. 2010) .................................................................. *passim*

*Pollack v. Laidlaw Holdings, Inc.*,
   No. 90 Civ. 5799 (PKL), 1993 WL 254932 (S.D.N.Y. June 25, 1993) ...................... 9

*Republic of Colombia v. Diageo N. Am. Inc.*,
   619 F. Supp. 2d 7 (E.D.N.Y. 2007) ............................................................................. 9

*Spates v. Manson*,
   619 F.2d 204 (2d Cir. 1980) ......................................................................................... 5

## Statutes

28 U.S.C. § 1292(b) .............................................................................................................. 8

28 U.S.C. § 158(a)(3) ............................................................................................................ 8

## Rules

Fed. R. Bankr. P. 8003(b) ..................................................................................................... 3

## Other Authorities

Cleary Gottlieb Steen & Hamilton LLP, *Lehman Bankruptcy Court Holds That CDO Provision Subordinating Swap Termination Payments to Lehman Is Unenforceable*, Alert Memo (Jan. 26, 2010) ................................................................. 12

Dan Schechter, *Debtor's Prepetition Loss of Priority Under Springing Subordination Agreement Triggered by Parent Corporation's Bankruptcy Filing Is Unenforceable Ipso Facto Provision*, 2010 Com. Fin. Newsl. 16 (2010) ......................................................................................................................... 12

Hunton & Williams LLP, *Bankruptcy Court Rules for Lehman on Flip Case*, Client Alert (Feb. 2010) ............................................................................................. 12

Latham & Watkins LLP, *The "Flip" Flap: Lehman Bankruptcy Judge Invalidates Payment Priority Clause*, Client Alert (May 13, 2010) .......................................................... 12

## INTRODUCTION

Nothing in the 42-page opposition brief filed by Lehman Brothers Special Financing Inc. ("LBSF") changes the fact that the Bankruptcy Court's July 19, 2010 Order is final and appealable as of right by BNY Corporate Trustee Services Limited, as Trustee ("BNY"). Nor does LBSF raise any colorable argument to rebut BNY's showing that the Order, even if interlocutory, plainly meets the standard for obtaining leave to appeal.

In its attempt to avoid the finality of the Bankruptcy Court's Order, LBSF tries to mislead this Court about the nature of the relief it has sought throughout this proceeding. LBSF goes so far as to manufacture additional remedies it supposedly could seek but that are nowhere to be found in its pleadings. But LBSF cannot change the record, which clearly demonstrates that LBSF sought only a declaratory judgment. The Bankruptcy Court's Order is necessarily final because it entered declaratory judgment on all the claims in LBSF's complaint.

As its principal rationale for delaying this appeal, LBSF cites the continuing English litigation between LBSF and the Noteholder in these transactions, Perpetual Trustee Company Limited ("Perpetual"). But the English litigation is irrelevant to the issue of whether the Order in this case is appealable. Furthermore, LBSF's preoccupation with "coordination," while a laudable goal, is also irrelevant here. BNY—the Trustee in these transactions—has always supported coordination to avoid being caught between conflicting orders regarding distribution of the collateral. As it stands now, however, LBSF has lost every round in the English courts and is down to its final appeal, which LBSF admits will not likely be resolved until more than a year from now. Meanwhile, LBSF has already obtained a declaratory judgment regarding the effect of U.S. bankruptcy law on the Transaction Documents. Under these circumstances, BNY has the right to seek appellate review of the Bankruptcy Court's erroneous decision as soon as possible and thereby eliminate any potential conflict.

On the issue of leave to appeal, LBSF's opposition is most revealing for what it fails to address: This case presents the paradigmatic situation in which leave to appeal is appropriate. This is not an attempt to appeal an interlocutory discovery ruling, or even the denial of a motion to dismiss. Instead, this is an appeal from the Bankruptcy Court's grant of *summary judgment*, and *judgment as a matter of law*, on all of LBSF's claims in this adversary proceeding. It is LBSF—not BNY—that seeks extraordinary relief here, by asking this Court to foreclose any appeal of the Bankruptcy Court's decision until the English appellate process has completely run its course. In essence, LBSF asks this Court to grant it an indefinite stay so that LBSF can continue to benefit from the unreviewed Bankruptcy Court's decision in its favor. But LBSF has not even attempted to demonstrate that it meets the difficult standard for obtaining such relief, nor could it.

LBSF's arguments against an appeal defy controlling precedent and basic common sense. The circumstances of this case speak for themselves: As part of the largest bankruptcy case in history, the Bankruptcy Court has issued a decision that the court itself called "controversial," "unprecedented," and a matter of "first" impression that "break[s] new ground as to unsettled subject matter." 422 B.R. 407, 422 (Bankr. S.D.N.Y. 2010). That decision provides a windfall for the debtor, LBSF, at the expense of noteholders who entered into these transactions based on the assurance that they would be protected in the unlikely event that LBSF's parent and the ultimate guarantor, Lehman Brothers Holdings Inc., went bankrupt.

Here again, LBSF is conspicuously silent on several key points: LBSF does not dispute that the Bankruptcy Court's decision has caused turmoil in the international securitization markets. Nor does LBSF contest that the issues in this case affect *billions* of dollars in similar transactions that are part of LBSF's broader bankruptcy proceeding (in addition to the

approximately $70 million at stake in the transactions underlying this case). And LBSF does not dispute that it is opposing appellate review of the Bankruptcy Court's decision while simultaneously using the decision as leverage in settlement negotiations concerning the other transactions to which it was a party. In other words, because of the Bankruptcy Court's ruling, LBSF hopes to gain billions of dollars that otherwise would be paid to noteholders pursuant to the terms of the Transaction Documents. LBSF wants to delay an appeal as long as possible in part so that it can extract billions in settlement payouts that cannot be undone once the Bankruptcy Court's decision is finally reviewed and corrected by a higher court. In the meantime, because the Bankruptcy Court has granted all the relief requested by LBSF—a declaratory judgment in its favor—nothing will happen here.

The Bankruptcy Court's order is appealable, now, as a matter of fundamental fairness—either because it is a final order appealable as of right or, at the very least, because it satisfies the standard for obtaining leave to appeal. BNY respectfully urges this Court to accept this appeal.[1]

## I. THE BANKRUPTCY COURT'S ORDER IS FINAL AND APPEALABLE AS OF RIGHT.

Despite LBSF's attempts to rewrite the history of this adversary proceeding to serve its own interests, the facts speak for themselves:

- LBSF initiated this proceeding with a complaint that sought only declaratory judgment, D.E. 1;[2]

---

[1] BNY further renews its request for oral argument on this motion under Federal Rule of Bankruptcy Procedure 8003(b)—a request BNY made in all of its opening papers and that LBSF has not opposed.

[2] Citations to "D.E." refer to entries on the Bankruptcy Court's docket. Citations to "BNY Br." refer to BNY's Memorandum of Law in support of the underlying motion for leave to appeal; citations to "Opp." refer to LBSF's opposition brief. Citations to "Ex." refer to exhibits to the Declaration of Randy M. Mastro filed concurrently with this Reply Memorandum. Defined terms have the same meaning assigned to them in BNY's Memorandum of Law in support of the underlying motion for leave to appeal.

- A few days later, LBSF told the Bankruptcy Court that this case should proceed "as quickly as possible," and LBSF stated that it planned to "file a motion for summary judgment that would dispose of the entire case in this Court," D.E. 5 at 2, 3;

- LBSF's motion for summary judgment did, in fact, state that the Bankruptcy Court's granting the motion would "dispos[e] of this adversary proceeding in its entirety," D.E. 6 at 36;

- The Bankruptcy Court's January 25, 2010 Memorandum Decision granted LBSF's motion for summary judgment in full, stated "that LBSF is . . . entitled to judgment as a matter of law," and indicated that it would "enter a declaratory judgment" for LBSF, 422 B.R. at 422; and

- The Bankruptcy Court's July 19, 2010 Order granted LBSF's motion for summary judgment in full, denied BNY's motion for summary judgment, and resolved all of the legal questions at issue in this adversary proceeding, D.E. 100.

The record clearly demonstrates that the Bankruptcy Court's Order is final and appealable by BNY as of right. LBSF's success on summary judgment is fatal to its claim that the Order is not final. Recognizing this, LBSF now manufactures an argument that—even though the Bankruptcy Court granted LBSF's summary judgment motion in full—the Bankruptcy Court "has not ruled on all of LBSF's requested relief." Opp. at 19. According to LBSF, the Bankruptcy Court's Order is interlocutory because it did not expressly include, verbatim, the end of a sentence in LBSF's complaint stating that LBSF "is entitled to payment under Swap Counterparty Priority." D.E. 1 at 11.

The language to which LBSF points did not contain any separate claim for relief. To the contrary, the clause did nothing more than take to its logical and inescapable end LBSF's first claim for declaratory relief, which sought:

> declaratory judgment that the provisions in the Transaction Documents modifying LBSF's right to priority of payments under the Transaction Documents as a result of its bankruptcy filing constitute unenforceable *ipso facto* clauses that violate 11 U.S.C. §§ 365(e)(1) and 541(c)(1)(B) and that LBSF is entitled to payment under Swap Counterparty Priority.

*Id.* The principal text states the legal conclusion that LBSF asked the Bankruptcy Court to reach—i.e., that the priority provisions "constitute unenforceable *ipso facto* clauses" under the

4

Bankruptcy Code. *Id.* The final few words of this claim in no way alter or supplement the declaratory relief that LBSF sought. Nor do they somehow represent an entirely separate claim for relief that the Bankruptcy Court never addressed. Instead, they merely highlight the obvious effect of the Bankruptcy Court's having ruled the priority provisions invalid—i.e., that Swap Counterparty Priority, the default priority system under the Transaction Documents, will apply. That the Bankruptcy Court did not incorporate LBSF's exact language in ruling for LBSF does not change the fact that the Bankruptcy Court granted LBSF's requested relief in full, or that its ruling is final.[3]

Tellingly, although LBSF asks this Court to conclude that the Bankruptcy Court's Order did not address all of its claims for relief, LBSF offers no response to BNY's point that LBSF previously urged the Bankruptcy Court to adopt this same conclusion and failed. *See* BNY Br. at 20 n.21. In particular, upon losing its battle against BNY's motion for entry of an order, LBSF specifically asked the Bankruptcy Court to style its Order as a grant of summary judgment for LBSF "IN PART" and to state that

> this Order is not a determination of LBSF's prayer for relief in the Complaint seeking a declaratory judgment that "LBSF is entitled to payment under Swap Counterparty Priority" and the Court hereby expressly reserves judgment on such prayer for relief and as to any enforcement of this Court's January 25, 2010 memorandum decision.

D.E. 103 Ex. I, Proposed Order, at 1, 3. The Bankruptcy Court rejected LBSF's request to limit the Order in this way. *See* D.E. 100.

Nor does LBSF dispute that the Bankruptcy Court's description of its own Order as "interlocutory" is not dispositive of its finality. *See* Opp. at 20–21; *see also Spates v. Manson*, 619 F.2d 204, 209 n.3 (2d Cir. 1980) ("Appealability turns on what has been ordered, not on how

---

[3] Indeed, in several respects, the declaratory relief set forth in the Bankruptcy Court's Order did not restate the exact language of LBSF's prayer for relief. *Compare* D.E. 100 at 3–4, *with* D.E. 1 at 11–12.

5

it has been described."). Furthermore, the Bankruptcy Court itself made clear that it styled its Order as "interlocutory" simply to "retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order," including any further coordination with the English courts. D.E. 100 at 4. Such continuing jurisdiction is *consistent* with entry of a final order and does not render the Order interlocutory. *See, e.g., In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2001) ("[A] bankruptcy court retains jurisdiction . . . while an appeal is pending and in the absence of a stay, to enforce the order or judgment appealed from."); *see also* BNY Br. at 22.

LBSF's only other basis for attempting to avoid the finality of the Bankruptcy Court's ruling is to claim that the Order is not final because a foreign court has "requested" that it not be so. *See* Opp. at 24. That is not a valid consideration under the applicable federal statutes or basic tenets of civil procedure. LBSF quotes several authorities that extol the benefits of "communication" between U.S. and foreign courts in certain situations. *See* Opp. at 24–26. But none of those authorities supports LBSF's proposition that a final, federal-court order such as the Bankruptcy Court's Order here can be deemed interlocutory based solely on a foreign court's "request." The correspondence between the two courts is irrelevant now that the Bankruptcy Court has entered its Order, the finality of which must be evaluated under U.S. law.

LBSF's claim is also incorrect as a factual matter; the English courts have made no such "request." Although LBSF's opposition brief describes (at length) certain correspondence between the Bankruptcy Court and the English High Court, LBSF intentionally avoids quoting the key passage in which the High Court expressly *approved* the Bankruptcy Court's granting of declaratory judgment. First, LBSF represented to the High Court that LBSF sought only declaratory relief in this proceeding. *See* English High Court Tr. 107:4–9 (July 9, 2009) ("[T]he

6

complaint [in LBSF's U.S. action] ... is simply phrased in terms of declaratory relief"; "[t]he complaint seeks declarations, declaratory relief[] that the clauses are unenforceable and that [BNY] giving effect to them would violate the automatic stay."). Then—knowing that the Bankruptcy Court was set to rule on the parties' motions for summary judgment—the High Court wrote to confirm that the Bankruptcy Court would "*go no further* ... than to make a declaratory judgment." D.E. 92 Ex. D at 2 (Nov. 18, 2009) (emphasis added). That is exactly what the Bankruptcy Court did, and it is the full extent of the relief sought by LBSF in this proceeding. Nothing about an appeal of the Bankruptcy Court's Order would upset any remaining coordination with the English courts, whether in this adversary proceeding or as part of the overall bankruptcy case.[4]

To be sure, BNY has consistently supported coordination with the English courts as part of any *enforcement* proceeding regarding the distribution of the collateral. That is why BNY has stated repeatedly that it seeks to avoid a situation in which it is subject to conflicting judgments *requiring it to distribute the collateral*. But LBSF's complaint in this proceeding sought only declaratory judgment. There is no truth to LBSF's claim that BNY "agree[d]" to a "two-stage resolution" of this adversary proceeding, with a "remedies stage" after the Bankruptcy Court ruled on the motions for summary judgment. Opp. at 10. Indeed, after making that incorrect assertion, LBSF's opposition brief quotes BNY's counsel's statement on the record that, even if LBSF were successful *in this adversary proceeding*, "there has to be something more"—such as

---

[4] The English High Court has asked only that the Bankruptcy Court not "enter[] any judgment or tak[e] any action" that "might pre-empt any decision of" the English court. D.E. 92 Ex. C at 2 (Mar. 10, 2010); *see also* D.E. 92 Ex. J at 1 (Apr. 23, 2010) (same). But of course, no final order in this proceeding could require BNY to act (or declare that BNY is required to act) with regard to the collateral or proceeds. Instead, in line with the full extent of the relief sought by LBSF, the Order here merely declares that the provisions purporting to modify LBSF's payment priority are unenforceable and that any subsequent action to enforce such provisions would violate the automatic stay under U.S. bankruptcy law.

an "enforcement stage" within the broader bankruptcy proceeding—during which time the Bankruptcy Court could address any "conflicting decisions." Tr. 62:23, 63:10-15 (Nov. 19, 2009). In other words, BNY has maintained that coordination will be necessary in the event that LBSF—in its overall bankruptcy proceeding or in a separate adversary proceeding—uses the final declaratory judgment from this proceeding as the basis to seek injunctive relief or some other remedy (such as money damages) that would compel BNY to distribute the collateral pursuant to Swap Counterparty Priority as opposed to Noteholder Priority.[5] Such relief is not available to LBSF in this proceeding, however, and therefore the Bankruptcy Court's final Order (and an appeal from that Order) are not in tension with BNY's position in this litigation or with the views of the English High Court.

## II. THE BANKRUPTCY COURT'S ORDER SATISFIES THE STANDARD FOR OBTAINING LEAVE TO APPEAL.

Even if this Court does not agree that the Bankruptcy Court's Order is final and appealable by BNY as of right, the Order plainly meets the three-part standard for obtaining leave to appeal under 28 U.S.C. § 158(a)(3) and § 1292(b) because it involves (i) controlling questions of law, (ii) on which there is substantial ground for difference of opinion, and (iii) an appeal would materially advance the ultimate termination of this litigation.

Significantly, LBSF "does not dispute" that the Bankruptcy Court's Order involves "controlling questions of law." Opp. at 32. Yet LBSF argues that there is no substantial ground for difference of opinion on those questions, stating that "there can be no genuine doubt that the Bankruptcy Court . . . applied the correct legal standard." *Id.* at 34. That contention is not

---

[5] BNY's position on this point has been consistent. *See, e.g.*, D.E. 78 at 42 (urging that "no *enforcement action* should proceed on any order in this litigation absent further communication and coordination between the Courts and further hearing on any legal or factual issues related to *enforcement*" (emphases added)).

8

credible. The Bankruptcy Court itself stated that it had reached "the first such interpretation of the *ipso facto* language" and that it "anticipate[d] that [its] ruling ... may be a controversial one." 422 B.R. at 422.[6] It also confirmed that the "issues presented in this litigation" are "unprecedented." *Id.* The Bankruptcy Court's recognition that it was deciding a particularly difficult issue of first impression is all that is necessary to establish substantial ground for difference of opinion. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21 (2d Cir. 1990) (finding substantial ground where lower court decided difficult questions of first impression); *In re Trace Int'l Holdings, Inc.*, No. 04 Civ. 1295 (KMW), 2009 WL 3398515, at *3 (S.D.N.Y. Oct. 21, 2009) (finding substantial ground "given the difficult issue of apparent first impression in this bankruptcy appeal"); *Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 11 (E.D.N.Y. 2007) (finding substantial ground where lower court "had to address significant legal and policy concerns that do not appear to have been considered in other ... decisions"). That standard is easily met here. Furthermore, as BNY set forth in detail in its opening brief, the Bankruptcy Court's ruling suffers from a number of serious flaws, many of which are apparent from the face of the decision. *See* BNY Br. at 25–29; *see also* note 7, *infra* (citing a representative sample of law firms' analyses questioning the Bankruptcy Court's decision). This Court can find substantial ground for difference of opinion after "analyz[ing] the strength of the arguments in opposition to the challenged ruling." *Pollack v. Laidlaw Holdings, Inc.*, No. 90 Civ. 5799 (PKL), 1993 WL 254932, at *3 (S.D.N.Y. June 25, 1993) (citation omitted). Yet, in response to the significant arguments raised by BNY in its opening brief, LBSF musters only the flimsy complaint that BNY's brief "argue[d] the merits" prematurely. Opp. at 33 n.21.

---

6 LBSF accuses BNY of quoting the Bankruptcy Court out of context. *See* Opp. at 32, 35–36. But the statements on just *one page* of the opinion show that the Bankruptcy Court expressly and repeatedly recognized that there is substantial ground for difference of opinion on the questions it decided. *See, e.g.*, 422 B.R. at 422 (characterizing its decision as "break[ing] new ground as to unsettled subject matter").

9

An immediate appeal of the Bankruptcy Court's Order also would materially advance the ultimate termination of this proceeding. LBSF's only argument under this prong is its bizarre assertion that an immediate appeal somehow "would prolong the ultimate termination of this litigation, rather than advancing it." Opp. at 38. LBSF does not explain how an appeal now—instead of LBSF's proposed delay—could literally make this proceeding *take longer*. Indeed, only *LBSF's* position will prolong this case unnecessarily. In LBSF's view, the U.S. courts should do nothing for a year or more while waiting for the appellate process in the Perpetual litigation in England to run its course. Only then, under LBSF's timeline, would the entire U.S. appellate process even begin.

In support of its push for indefinite delay, LBSF suggests that no appeal should progress in the United States because the ultimate result of the English litigation could "moot" any appeal in this case. *Id.* LBSF's assertion of mootness is not grounded in reality. Even if appellate review were to be deferred for years until the English appellate process is complete, *and* even if the English courts were to rule for LBSF (for the first time), the English courts' interpretation of the law that governs the Transaction Documents—English law—might well remain the same. Indeed, if LBSF succeeds with its delay strategy *and* the English courts ultimately rule for LBSF, they may well do so out of deference to the Bankruptcy Court's decision under U.S. law. (At least, that is one of LBSF's arguments on appeal in the English litigation.[7]) Such a result would find the parties at square one of the appellate process in the United States, having wasted more than a year of valuable time waiting for the English litigation to conclude.

---

[7] LBSF has sought recognition in the English courts of its U.S. bankruptcy case, thereby laying the groundwork to ask the English courts to discard their own judgments and defer to the Bankruptcy Court's Order. *See* Notice of Order, No. 08-13555, D.E. 6055 (Bankr. S.D.N.Y. Dec. 7, 2009). Similarly, the Bankruptcy Court has advised that its approach to further "coordination" would be to insist that the English courts give effect to its Order. D.E. 92 Ex. G at 2.

In any event, the Bankruptcy Court and LBSF's stated view is that this case is governed by U.S. bankruptcy law, to the exclusion of English law. There is therefore no reason to wait for the English litigation to end before an appeal even begins in this proceeding. And there certainly is no basis to conclude that allowing appellate review to move forward in the United States would somehow "prolong" the ultimate resolution of these issues—an assertion that is impossible to comprehend.

## III. LBSF'S RESPONSE ONLY CONFIRMS THAT PROMPT APPELLATE REVIEW IS NECESSARY AND APPROPRIATE.

LBSF's opposition brief is perhaps most revealing in what it does *not* dispute: that the Bankruptcy Court's Order grants LBSF a multi-billion-dollar windfall by striking provisions of the Transaction Documents that protected noteholders in this very situation and that were essential to these transactions, which Lehman entities designed and sold around the world. LBSF also does not deny that it has already been using the Bankruptcy Court's decision as leverage in negotiations with noteholders in other transactions, or that delaying the appeal would allow LBSF more than a year to benefit in this way, among others, from the Bankruptcy Court's flawed decision. (Indeed, during the delay that LBSF seeks, the Bankruptcy Court's unreviewed decision would be *controlling precedent* on this issue.)

Nor does LBSF offer any meaningful response to the incontrovertible fact that the Bankruptcy Court's Order has caused turmoil in the international markets. The Bankruptcy Court's decision has received widespread attention—almost all of it negative—because the ruling is flawed and, by extension, upsets reasonable and longstanding market expectations. *See* BNY Br. at 31 & n.28 Exs. C–D, J–N (citing a representative selection of articles). After no doubt scrambling to find *any* source taking the contrary view, LBSF found only one—a newsletter article "predict[ing] that" the Bankruptcy Court's "decision will be upheld." Dan

Schechter, *Debtor's Prepetition Loss of Priority Under Springing Subordination Agreement Triggered by Parent Corporation's Bankruptcy Filing Is Unenforceable Ipso Facto Provision*, 2010 Com. Fin. Newsl. 16 (2010). But even that article supports BNY's position *on this motion* for an appeal: It highlights the Bankruptcy Court's own recognition of "the groundbreaking nature of its decision," and the author "predict[s] that . . . savvy guarantors will soon begin to use the 'related entity bankruptcy' ploy as a means of invalidating *ipso facto* cross-corporate default provisions." *Id.* The Bankruptcy Court's decision should be reviewed now, before such gamesmanship further erodes market confidence and stability.[8]

Incredibly, LBSF's other tactic is to assert that the Bankruptcy Court's decision is inconsequential because it "was expressly and narrowly tailored to the Lehman bankruptcy filing, an extraordinary event." Opp. at 40. Even within the Lehman bankruptcy proceeding, as LBSF has proclaimed, "[b]illions of dollars . . . are at stake" based on the Bankruptcy Court's ruling. D.E. 6 at 1 n.1. Swift appellate review is warranted on this basis alone. But more fundamentally, it is simply not correct as a legal matter that the Bankruptcy Court's *statutory*

---

[8] Based on this single article, LBSF asserts that the "commentary on the Bankruptcy Court's opinion has . . . been mixed." Opp. at 40 n.24. That is not true; the "commentary" has consistently questioned the correctness of the court's ruling. *See, e.g.*, Hunton & Williams LLP, *Bankruptcy Court Rules for Lehman on Flip Case*, Client Alert, at 2 (Feb. 2010), Ex. A ("[T]here are significant arguments that the decision is wrong in a number of respects."); Latham & Watkins LLP, *The "Flip" Flap: Lehman Bankruptcy Judge Invalidates Payment Priority Clause*, Client Alert, at 4 (May 13, 2010), Ex. B ("[T]his decision is troubling for a number of reasons, particularly since the structured note program in question was arranged by Lehman. The flip clause was a material element in the protection offered to the note holders and was voluntarily agreed to by LBSF in order to ensure the success of the issuance. Now, note holders will be paid only after LBSF has been paid and, in some cases, there will not be enough money to pay both."); Cleary Gottlieb Steen & Hamilton LLP, *Lehman Bankruptcy Court Holds That CDO Provision Subordinating Swap Termination Payments to Lehman Is Unenforceable*, Alert Memo, at 5 (Jan. 26, 2010), Ex. C ("This case creates significant uncertainty regarding the enforceability of market-standard subordination provisions and threatens the legitimate commercial expectations of CDO noteholders and other participants in structured finance transactions."). Even so, LBSF's assertion that there are mainstream "mixed" views is fatal to its ridiculous assertion, earlier in its opposition brief, that there is no "substantial ground for difference of opinion" regarding the Bankruptcy Court's decision because "there can be no genuine doubt that the Bankruptcy Court . . . applied the correct legal standard." Opp. at 34.

*interpretation* ruling is (or could be) confined to the context of a single bankruptcy proceeding. The Bankruptcy Court itself touted the "unprecedented" nature of its decision, 422 B.R. at 422; acknowledged it was "opening up a ... 'can of worms,'" *id.* at 419; and "recognize[d] the importance of this litigation ... to BNY, to LBSF and to parties who are not in the room, including ... market participants who are looking at the risks of securitization transactions in light of the consequences of the *ipso facto* clause as I have interpreted those consequences," Tr. 53:25–54:6 (June 30, 2010).[9]

Finally, repeating a strained theme that runs throughout its opposition brief, LBSF attacks BNY's motives for seeking appellate review of the Bankruptcy Court's decision. *See* Opp. at 41. BNY's sole objective is to act in a manner consistent with the role that the Bankruptcy Court—at LBSF's insistence—imposed upon BNY when it denied BNY's motion to dismiss (which argued that Perpetual is a necessary party to this action, *see* D.E. 16). The Bankruptcy Court ruled that BNY acts as Perpetual's surrogate, and BNY must fill that role unless and until another court finds otherwise. LBSF makes much of Perpetual's "silence" in this proceeding. *See* Opp. at 41. But Perpetual's absence is the very reason BNY is here, and it goes to the heart of the jurisdictional issue that will be part of any appeal in this matter. *See* BNY Br. at 10 n.10. That Perpetual is not a party to this proceeding does not suggest that Perpetual has no interest in the appeal; indeed, it is self-evident that Perpetual would benefit if the Bankruptcy Court's Order were overturned. Contrary to LBSF's assertions, it is obvious that Perpetual is being harmed by the delay of an appeal here because, until the U.S.-law issues are resolved, Perpetual cannot pursue its rights to the collateral that have already been established by the English courts. LBSF

---

[9] The Bankruptcy Court even stated that it does not wish its ruling to be subject to appellate review because an appeal will "neuter the effectiveness of the current ruling by creating a *global doubt* as to [its] correctness." Tr. 51:7–8 (June 30, 2010) (emphasis added).

13

refers vaguely to "intricate cross-border proceedings" that militate against an appeal. Opp. at 41. But what "intricate cross-border proceedings" preclude this Court from hearing an appeal in accordance with the applicable federal statutes and rules of procedure? This is a subterfuge that, unsurprisingly, goes unexplained.

## CONCLUSION

BNY's right to appeal cannot be abridged by the insertion of the word "interlocutory" into an otherwise final order. For the foregoing reasons, the Bankruptcy Court's Order is final and appealable by BNY as of right; if this Court does not agree that the Order is final, BNY respectfully requests that the Court grant BNY leave to appeal.

Dated: New York, New York
      August 23, 2010

GIBSON, DUNN & CRUTCHER LLP

By: /s/
   Randy M. Mastro
   Michael A. Rosenthal

200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035
rmastro@gibsondunn.com
mrosenthal@gibsondunn.com

REED SMITH LLP

By: /s/
   Eric A. Schaffer
   Michael J. Venditto

599 Lexington Avenue
New York, New York 10022
Telephone: 212.521.5400
Facsimile: 212.521.5450
eschaffer@reedsmith.com

*Attorneys for*
*BNY Corporate Trustee Services Limited*

14